UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARRELL T. OPPERMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil  Action  No. 06-1824 (EGS) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for a grant of summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.  In support of this Motion, Defendant respectfully submits the attached memorandum of points and authorities with exhibits, a statement of material facts as to which there is no genuine dispute, and a proposed order.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.

Washington, D.C. 20530
(202) 307-0372

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARRELL T. OPPERMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1824 (EGS) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Defendant respectfully submits this statement of material facts as to which there is no genuine dispute.

1.    Plaintiff is a former officer, specifically a nurse anesthetist in the rank of Lieutenant Commander, in the United States Navy. See Compl. at ¶ 2 and Ex. A (attached).

2.    On August 20, 2003, a general court-martial composed of a military judge, a Marine Corps officer who is part of the Department of the Navy, convicted Plaintiff in accordance with his pleas of dereliction of duty, failure to obey a lawful order, operating a vehicle while drunk, being found drunk on duty, wrongfully and recklessly engaging in conduct likely to cause death or serious bodily harm, and being incapacitated for duty through prior wrongful indulgence in intoxicating liquor, all violations of the Uniform Code of Military Justice. See Compl. at ¶¶ 9, 10 and Ex. A.

3.    Plaintiff was sentenced to confinement for nine months, forfeiture of $2,000.00 pay per month for nine months, and dismissal from the Naval Service. Id. The general court-martial convening authority approved the adjudged sentence, but suspended the adjudged

confinement and forfeitures pursuant to a pretrial agreement.  <u>See</u> Compl. at ¶ 2, 11 and Ex. A.

4.      Plaintiff's court-martial conviction was subject to automatic review by the United States Navy and Marine Corps Court of Criminal Appeals ("NMCCA").  <u>See</u> Compl. at ¶ 12.

5.      One of Plaintiff's contentions before the Navy Court of Criminal Appeals was that he was denied equal protection as guaranteed by the due process clause of the Fifth Amendment because the military judge who presided at his trial and judges of the Navy Appeals Court lacked the protection of a fixed term of office, in contrast with the trial and appellate military judges of the Army and Coast Guard.  <u>See</u> Compl. at ¶ 15 and Ex. B, D.  On June 29, 2006, the NMCCA declined to grant relief to Plaintiff.  <u>See</u> Compl. at ¶ 16 and Ex. A.

6.      Plaintiff filed a petition for review in the United States Court of Appeals for the Armed Forces ("CAAF") on the issue of fixed terms of office for military judges.  <u>See</u> Compl. at ¶ 18 and Ex. E.

7.      CAAF denied Plaintiff's petition on October 11, 2006.  <u>See</u> Compl. at ¶ 19 and Ex. G.

8.      Military personnel are subject to trial by court-martial under the Uniform Code of Military Justice.  10 U.S.C. §§ 801 *et seq.*  <u>See</u> Compl. ¶ 4 and Ex. A, B, C, D, E, F, G.

9.      Military judges preside over courts-martial and appellate military judges serve on the intermediate appellate courts provided for in the UCMJ and known as Courts of Criminal Appeals.  UCMJ arts. 26, 66(a), 10 U.S.C. §§ 826, 866(a).  <u>See</u> Compl. at  ¶ 5.

2

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


    s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARRELL T. OPPERMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1824 (EGS) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, Darrell T. Oppermann, a former officer in the Navy, filed this action seeking declaratory relief against the United States, specifically the Department of the Navy ("Navy") under 28 U.S.C. § 1331 and the Fifth Amendment to the U.S. Constitution. Plaintiff's Complaint alleges that Plaintiff was convicted by a Navy general court-martial on August 20, 2003 in violation of his Constitutional equal protection guarantees insofar as "fixed terms of office were prescribed for Army and Coast Guard trial and appellate military judges but not for those of the Navy, Marine Corps, and Air Force." Complaint ¶ 7. See also Compl. at ¶¶ 9, 22. Plaintiff's claims clearly are legal in nature and thus susceptible of resolution by dispositive motion at this stage of the proceedings.

Notably, Plaintiff does not allege that the various military and civilian judges who presided over his court martial and subsequent appeals were biased or acted improperly. Instead, Plaintiff challenges the "inter-service disparity" he alleges in Paragraph 7 of his Complaint, a broad challenge to the military judicial system itself. Plaintiff claims that since this purported

"inter-service disparity," Compl. at ¶ 8, violated his Constitutional right to equal protection, his conviction should be overturned. Complaint ¶ 22, Prayer for Relief. Plaintiff's Complaint must be dismissed. First, his challenge to his court-martial conviction is outside the scope of collateral review by this Court. Second, even should this Court exercise jurisdiction over Plaintiff's Complaint, the system the Navy uses to assign and deploy its judges is Constitutional and thus the Complaint must be dismissed or, in the alternative, Defendant is entitled to a grant of summary judgment.

## STATEMENT OF FACTS

Plaintiff is a former United States Navy officer, specifically a nurse anesthetist who held the rank of Lieutenant Commander. Compl. at ¶ 2. On August 20, 2003, pursuant to a plea agreement, a general court-martial composed of a single military judge convicted Plaintiff of dereliction of duty, failure to obey a lawful order, operating a vehicle while drunk, being found drunk on duty, wrongfully and recklessly engaging in conduct likely to cause death or serious bodily harm, and being incapacitated for duty through prior wrongful indulgence in intoxicating liquor, all violations of the Uniform Code of Military Justice ("UCMJ"). See Exhibit A.

The underlying facts of these charges and subsequent conviction included the fact that, although he was the sole nurse anesthetist on duty on September 15, 2002, he drank more than a pint of gin, became drunk, and then continued to treat patients. Ex. F, attachment B at 2. For these offenses, Plaintiff was sentenced to confinement for nine months, forfeiture of $2,000.00 pay per month for nine months, and dismissal from the Naval Service. Compl. at ¶ 9. The general court-martial convening authority approved the adjudged sentence, but suspended the adjudged confinement and forfeitures pursuant to a pretrial agreement. Compl. at ¶ 11.

2

In the system of military justice, military judges are commissioned officers who are members of the bar of a federal court or a State's highest court.  Weiss v. United States, 510 U.S. 163, 168 (1994) (citing Art. 26, UCMJ, 10 U.S.C. § 826).  Appellate review consists in the Courts of Criminal Appeals, which sit in appellate panels.  10 U.S.C. § 866.  Decisions of those appellate tribunals are subject to review by the Court of Appeals for the Armed Forces, which consists of civilian judges who are appointed by the President, with the advice and consent of the Senate, for fixed terms of 15 years.  10 U.S.C. § 867, 942.  Plaintiff was at all relevant times represented by counsel.  Plaintiff's court-martial conviction was subject to automatic review by the United States Navy and Marine Corps Court of Criminal Appeals ("NMCCA").  Complaint ¶ 12.  In connection with that appeal, both Plaintiff and the government submitted briefs on two issues, one of which was the issue of fixed terms of office for military judges.  See Complaint ¶ 15; See Exhibits B, C, D.  On June 29, 2006, the NMCCA rejected Plaintiff's appeal.  See Complaint ¶ 16; see Exhibit A.  Plaintiff filed a petition for review in the United States Court of Appeals for the Armed Forces ("CAAF") on the issue of fixed terms of office for military judges. See Complaint ¶ 18; see Exhibit E.  The CAAF denied Plaintiff's petition on October 11, 2006. See Complaint ¶ 19; see Exhibit G.

## ARGUMENT

A.     Standards of Review.

"In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the Complaint's well-pled factual allegations as true and draw all reasonable inferences in the Plaintiff's favor."  Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is

3

not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, Dep't. of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), affirmed, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S. Ct. 35 (2004).  Moreover, a party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) may be granted if it is beyond doubt that the Plaintiff can demonstrate no set of facts that support his claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court must treat the Complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).  However, "the Court need not accept inferences drawn by the Plaintiff if those inferences are unsupported by the facts alleged in the Complaint, nor must the Court accept the Plaintiff's legal conclusions."  Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Generally, a court may not look outside the facts contained in the four corners of the Complaint when considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim. See Gordon v. National Youth Work Alliance, 675 F.2d 356, 361 (D.C. Cir. 1982).  However, the Court may "take judicial notice of matters of a general public nature, such as court records,

4

without converting the motion to dismiss into one for summary judgment." Baker v. Henderson, 150 F.Supp. 2d 17, 19 n. 1 (D.D.C. 2001). "Thus, in considering respondent's motion to dismiss for failure to state a claim, the Court may consider the record created by the military courts as well as the factual findings of the court-martial." New v. Rumsfeld, 350 F.Supp. 2d 80, 89 (D.D.C. 2004) ("New v. Rumsfeld I"), aff'd, 448 F.3d 403 (D.C. Cir. 2006) ("New v. Rumsfeld II").

Similarly under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id. at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the party opposing summary judgment. Id. at 248. If the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is

appropriate. Id. at 251.

       B.     This Court lacks Jurisdiction Over This Matter Because Plaintiff's Challenge Has Been Given Full and Fair Consideration by the Military Courts.

Except in a limited class of cases, military court decisions have res judicata effect barring review in the Federal civil courts. See Schlesinger v. Councilman, 420 U.S. 738, 746 (1975) (discussing res judicata and limited scope of Federal civil courts' subject matter jurisdiction to entertain collateral attacks on decisions of the military courts). Cases such as this one can only go forward when the underlying military court judgment was "void . . .because of lack of jurisdiction or some other equally fundamental defect." Id. See also id. at 753.

This Court has extremely limited authority to review court-martial proceedings for error. Its scope of review initially is limited to whether the claims raised by the Plaintiff were given full and fair consideration by the military courts. Burns v. Wilson, 346 U.S. 137, 144 (1953). If the issues have been given full and fair consideration in the military courts, the federal court should not reach the merits. "It is not the duty of the civil courts simply to repeat . . . [the] process – to reexamine and reweigh each item of evidence. . . " Id. This principle applies even where the issues considered were constitutional challenges. "The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights . . . [I]t would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings – of the fair determinations of the military tribunals after all military remedies have been exhausted." Id. at 142 .

In New v. Rumsfeld II, 448 F.3d 403; 371 U.S. App. D.C. 107 (2006), the Court of Appeals for the District of Columbia Circuit read the Burns full and fair consideration standard

together with the standard announced in <u>Schlesinger v. Councilman</u>, 420 U.S. 738 (1975)

(discussing review only for "fundamental error").  The Court of Appeals addressed the issue of

collateral review of military court-martial convictions in a non-habeas case, and explained that

"errors must be fundamental to void a court-martial judgment on collateral review.  And in light

of <u>Councilman</u>'s point that non-habeas review is if anything more deferential than habeas review

of military judgments, 420 U.S. at 753, a military court's judgment clearly will not suffer such a

defect if it satisfies <u>Burns</u>'s 'fair consideration' test."  <u>New II</u>, 448 F.3d at 408.

In <u>New v. Rumsfeld I</u> (a challenge under both statute and Constitution to a court-martial

conviction of an Army soldier for disobeying a lawful order), the District Court found that the

issues raised by the Plaintiff had been fully litigated at trial and considered carefully by the

military courts of appeals.  The issues were therefore "fully and fairly considered."  <u>New I</u>, 350

F.Supp.2d at 93.  Courts in other circuits have found that an issue is deemed to have been given

"full and fair consideration" when it has been briefed and argued, even if the military court

summarily disposes of the matter.  <u>Watson v. McCotter</u>, 782 F.2d 143, 145 (10th Cir.), *cert.*

*denied*, 476 U.S. 1184 (1986).  Plaintiff bears the burden of showing the military review

provided was "legally inadequate" to resolve his claims.  <u>Burns</u>, 346 U.S. at 146.

In the present case, Plaintiff was represented by counsel throughout and his challenge to

the appointment process for the military judge who convicted and sentenced him was fully

briefed by both Plaintiff and the government to the Navy Marine Corps Court of Criminal

Appeals ("NMCCA").  The NMCCA declined to grant relief.  The <u>per curiam</u> opinion states

"[w]e have carefully examined the record of trial, the appellant's two assignments of error, the

government's response, and the appellants' reply.  We conclude that the findings and sentence

are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed." <u>See</u> Exhibit A. The issue was briefed again to the Court of Appeals for the Armed Forces ("CAAF") upon Plaintiff's petition for grant of review. The petition then was denied by the CAAF.

The NMCCA stated clearly that it gave careful consideration to the briefings and record and by its decision indicating that it simply did not find the issue meritorious or requiring discussion. The NMCCA based its determination on the fact that the issue presented by the Plaintiff has already been examined and decided by both the CAAF and the Supreme Court. <u>See</u> Exhibit A. Similarly, the CAAF issued its decision to deny Plaintiff's petition for review after the briefing on, and consideration of, the NMCCA on appeal. Plaintiff's challenge to his court-martial conviction based on the alleged "inter-service disparity" of fixed terms for military judges was therefore fully and fairly considered by the military appellate courts.

To the extent that this Court reads New II to require review for "fundamental error" separate and apart from satisfying itself that Plaintiff received full and fair consideration in the military courts, there was no "fundamental error" by the military courts. The decision of the NMCCA was explicitly based on two court decisions, the CAAF's decision in <u>United States v. Loving</u>, 41 M.J. 213 (C.A.A.F. 1994), and the Supreme Court's decision in <u>Weiss v. United States</u>, 510 U.S. 163 (1994). In addition, the CAAF previously had declined to review the very issue presented by Plaintiff in <u>United States v. Gaines</u>, USCA Docket No. 06-0127/NA (C.A.A.F. August 11, 2006), 64 M.J. 79 (C.A.A.F. 2006).

<u>United States v. Loving</u> involved a murder conviction where one of many allegations of error on appeal was that the military judge did not serve a fixed term of office. The CAAF

rejected that assignment of error summarily, citing to <u>United States v. Graf</u>, 35 M.J. 450 (C.M.A. 1992) (the Court of Military Appeals ("C.M.A.") is the former name for CAAF).  The CAAF in <u>Graf</u> examined the issue of fixed terms of office for military judges and found that they are not required as a matter of constitutional due process at courts-martial.  <u>Id</u>. at 453.  The Court further found that Congress has not deemed fit to provide for a fixed term of office for military trial and appellate judges, but that other Uniform Code of Military Justice ("UCMJ") provisions provided the requisite protections and independence for all military judges to satisfy the Constitution.  <u>Id</u>. at 490.  The issue of whether fixed terms of office for military judges is constitutionally required finally was decided by the U.S. Supreme Court in <u>Weiss v. United States</u>, 510 U.S. 163 (1994). The <u>Weiss</u> Court found that lack of fixed terms for military judges did not violate the Fifth Amendment's due process clause because the factors favoring a fixed term of office were not "so extraordinarily weighty as to overcome the balance achieved by Congress. . . " in the UCMJ.  <u>Id</u>. at 181.

We understand that in 1999 and 2000 respectively, the U.S. Army and U.S. Coast Guard implemented service-specific regulations establishing minimum three-year assignments for military judges, subject to several exceptions.  The Navy and Air Force continue to assign military judges on orders for a certain number of years, but do not specify a set term through regulations.  <u>U.S. v. Gaines</u>, 61 M.J. 689 (N.M.C.C.A. 2005) was the first equal protection challenge in which a Navy military appellate court addressed the differences among service regulations.  The NMCCA in <u>Gaines</u> held that because the <u>Weiss</u> and <u>Loving</u> decisions found that Congress provided for sufficient Fifth Amendment protections for service members in drafting the UCMJ, and because "Congress has sanctioned distinctions between the services in

authorizing each service secretary to prescribe regulations for the manner in which military judges are detailed," <u>Gaines</u>, 61 M.J. at 692 (citing Art. 26(a) UCMJ), the regulatory differences among the services in assigning military judges did not violate the accused's equal protection rights. <u>Id.</u>  The CAAF did not grant review on the issue.  <u>Gaines</u>, 64 M.J. 79 (C.A.A.F. 2006).

The NMCCA and the CAAF decisions were based on both established and well-reasoned law they therefore committed no error, fundamental or otherwise.  As <u>New II</u> makes clear, this is not the extreme case over which this Court can exercise jurisdiction.  In that case, the Court of Appeals indicated that the military court decisions would have <u>res judicata</u> effect, and thus that relief would be barred, "unless the judgments were 'void.'"  <u>New v. Rumsfeld</u>, 448 F.3d 406 (noting that "the defect must be fundamental for a judgment is not rendered void merely by error") (internal punctuation and quotation omitted).  Therefore, Plaintiff's constitutional challenge to his court-martial conviction was both "fully and fairly considered" by the military appellate courts and those decisions contained no fundamental error.  After all, as the United States Supreme Court observed in <u>Schlesinger</u>, "We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate the [service members'] constitutional rights."  <u>Schlesinger</u>, 420 U.S. at 758.

      C.    <u>The Navy Is Entitled to a Grant of Summary Judgment on the Merits Because the Lack of Fixed Terms of Office for Navy Military Judges Does Not Violate the Constitution.</u>

The United States Supreme Court in <u>Weiss</u> specifically held that the lack of fixed terms of office for military judges did not violate the Constitution.  There is nothing in the <u>Weiss</u> decision that indicates that having a fixed term of office, or the alleged disparity between the services in this regard, violates the Constitution's due process or equal protection guarantees.

10

While the Due Process Clause applies to military proceedings, Weiss 510 U.S. at 176, "in determining what process is due, courts 'must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces." Id. at 177 (citing U.S. Const., Art. I, § 8). The Supreme Court specifically noted that Congress has "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline." Chappell v. Wallace, 462 U.S. 296, 301 (1983). "Judicial deference is thus 'at its apogee' when reviewing congressional decisionmaking in this area." Weiss, 510 U.S. at 177 (quotation omitted). Judicial deference "extends to rules relating to the rights of service members" insofar as "Congress has primary responsibility for the delicate task of balancing the rights of [service members] against the needs of the military. . . " Weiss, 510 U.S. at 179 (quotation omitted).

Fifth Amendment due process includes an equal protection component which, generally speaking, dictates that "persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Not all disparate treatment by the Government, however, rises to the level of an equal protection violation. This is especially true in the context of the military courts, over which this Court's review is extremely constrained. In evaluating Due Process challenges to proceedings in military courts, the Supreme Court has made clear that the test is "whether the factors militating [against the practice] are so weighty as to overcome the balance struck by Congress." Weiss, 510 U.S. at 179 (quotations omitted). Here, just as in Weiss, Plaintiff does not allege that the judges who presided over his case at the trial and appellate level were biased or acted improperly. Instead, just as in Weiss, Plaintiff asks the Court to assume that the alleged "inter-service disparity" prevents military judges, or perhaps

11

military proceedings, from being impartial in addressing service members' claims. Weiss, 510 U.S. at 179. The Supreme Court rejected such a broad and speculative Constitutional challenge in Weiss and this Court should do the same. Id. (noting that "Congress did not even create the position of military judge until 1968 . . . Courts-martial thus have been conducted in this country for over 200 years without the presence of a tenured judge, and for over 150 years without the presence of any judge at all").

Noting the Supreme Court's opinion in Weiss, holding that service members do not have a fundamental right under the Fifth Amendment to be tried by military judges with set terms of office, Plaintiff argues that the purported "inter-service disparity" cannot withstand even deferential rational-basis review. Compl. at ¶ 8. Plaintiff contends that once the Army and Coast Guard issued terms of office regulations for their trial and appellate military judges, the Navy was required to follow suit in order to avoid violating appellant's due process rights. See Compl. ¶ 8. However, Weiss holds that the military can utilize military judges with fixed terms, or not. Weiss, 510 U.S. at 179.

Furthermore, Plaintiff's claim regarding the purported "inter-service disparity," based on the assumption that Army and Coast Guard judges have "fixed terms," is not wholly accurate. The judges of those respective services are subject to the same personnel decisions that Navy judges potentially encounter. For example, under the Coast Guard regulations, although judges have established 3-year terms of office, they may be removed from their positions "under the normal personnel assignment process based on the needs of the service . . ." See Exhibit E, App. Army judges similarly may be removed from office "based on the needs of the service in time of war or national emergency" or "for good cause." Id. Therefore, these judges do not really serve

12

under so-called "fixed terms," but rather, under terms that may be modified at the discretion of those making personnel decisions in these respective services.

Furthermore, these "terms" are hardly different from the Navy system where all judges receive orders (of set duration) and may be removed only for proper reasons and are protected by provisions in the UCMJ.  "[T]he applicable portions of the UCMJ, and corresponding regulations, by insulating military judges from the effects of command influence, sufficiently preserve judicial impartiality so as to satisfy the Due Process Clause."  Weiss, 510 U.S. at 179. Article 26 of the UCMJ places military judges under the authority of the Judge Advocate General, rather than under the authority of the convening officer, and precludes convening authorities from preparing or reviewing any fitness reports of a military judge related to her judicial duties.  10 U.S.C. § 826.  "By placing judges under the control of Judge Advocates General, who have no interest in the outcome of a particular court-martial, we believe Congress has achieved an acceptable balance between independence and accountability."  Weiss, 510 U.S. at 180.  Article 37 of the UCMJ states that no convening authority "may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercises of its or his functions in the conduct of the proceedings."  10 U.S.C. §837.  Nor may a convening authority attempt to coerce or influence a military judge.  Id.  See also 10 U.S.C. § 898 (making it unlawful and subject to court-martial to intentionally fail to enforce or comply with the procedural obligations under the UCMJ).  Therefore, there is really no "unequal" treatment of service members as between the different services.

Third, all service members ultimately have the final protection of recourse to the same

Court, the CAAF (formerly the Court of Military Appeals).  "The entire system, finally, is overseen by the Court of Military Appeals, which is composed entirely of civilian judges who serve for fixed terms of 15 years.  That court has demonstrated its vigilance in checking any attempts to exert improper influence over military judges."  Weiss, 510 U.S. at 181.

Even assuming the purported "inter-service disparity" causes service members to be treated differently as between the different branches of the military, the approaches to judicial assignments among the respective services clearly meet this Court's very deferential standard of review.  First, the same UCMJ articles that ensure the independence of the military judiciary specifically sanction distinctions among the services in authorizing each service Secretary to prescribe regulations for the manner in which military judges are detailed.  10 U.S.C. § 826.  Congress has also sanctioned distinctions between the services in authorizing each Judge Advocate to establish a Court of Criminal Appeals and to prescribe uniform rules of procedure for their respective Court.  10 U.S.C. § 866.

Second, the possible reasons for the Navy declining to implement "fixed term" regulations clearly meet the deferential standard of review.  For example, the Navy may have determined that limiting the mobility of military judges, who tend to possess the greatest expertise in the area of military justice, would not best serve the fluctuating and evolving needs of the Navy.  Similarly, Navy leaders may have decided that having the ability to place a particular judge advocate on the bench at a specific time will ensure that the necessary training and career development of judge advocates generally could be accomplished.  Having fixed terms for military judges may impede these other staffing and military personnel decisions.  Here, deference is compelled, by serious separation of powers concerns, when the civilian judiciary is

14

asked to review personnel decisions made by the military.  See Weiss v. United States, 510 U.S. 163 (1994); Goldman v. Weinberger, 475 U.S. 503 (1986); Chappell v. Wallace, 462 U.S. 296 (1983); Rostker v. Goldberg, 453 U.S. 57 (1981); Gilligan v. Morgan, 413 U.S. 1 (1973); Orloff v. Willoughby, 345 U.S. 83 (1953).  Just as the Supreme Court has counseled, this Court should defer to the sound judgment of those best suited to determine the appropriate balance between a desire for an independent military judiciary, and the need for maximum flexibility.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be granted and Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of Counsel:
LCDR Heidi K. Hupp, JAGC, USN
General Litigation Division
Office of the Judge Advocate General
1322 Patterson Avenue Suite 3000
Washington Navy Yard D.C. 20374-5066

15

# EXHIBIT A

# IN THE U.S. NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS
## WASHINGTON NAVY YARD
## WASHINGTON, D.C.

### BEFORE

**J.W. ROLPH**                **J.F. FELTHAM**                **J.D. HARTY**

### UNITED STATES

### v.

### Darrell T. OPPERMAN
### Lieutenant Commander (O-4), Nurse Corps, U. S. Navy

NMCCA 200500012                              Decided 29 June 2006

Sentence adjudged 20 August 2003.  Military Judge: R.S.
Chester.  Review pursuant to Article 66(c), UCMJ, of General
Court-Martial convened by Commanding General, Marine Corps Base,
Camp Pendleton, CA.

LT BRIAN MIZER, JAGC, USNR, Appellate Defense Counsel
MR. EUGENE R. FIDELL, Civilian Appellate Defense Counsel
MR. MATTHEW S. FREEDUS, Civilian Appellate Defense Counsel
MS. CHARLOTTE E. CLUVERIUS, Civilian Appellate Defense Counsel
LCDR R.W. SARDEGNA, JAGC, USNR, Appellate Government Counsel

AS AN UNPUBLISHED DECISION, THIS OPINION DOES NOT SERVE AS PRECEDENT.

PER CURIAM:

    A military judge, sitting as a general court-martial,
convicted the appellant, pursuant to his pleas, of dereliction in
the performance of his duties, failure to obey a lawful order,
physically controlling a vehicle while drunk, being drunk on
duty, wrongfully and recklessly engaging in conduct that was
likely to cause death or serious bodily harm (two
specifications), and being incapacitated for the proper
performance of his duties as a result of wrongful previous
overindulgence in intoxicating liquor, in violation of Articles
92, 111, 112, and 134, Uniform Code of Military Justice, 10
U.S.C. §§ 892, 911, 912, and 934.  The military judge sentenced
the appellant to confinement for nine months, forfeiture of
$2,000.00 pay per month for a period of nine months, and to be
dismissed from the United States Navy.  The convening authority
approved the adjudged sentence, but suspended the adjudged
confinement and forfeitures pursuant to a pretrial agreement.

We have carefully examined the record of trial, the appellant's two assignments of error, the Government's response, and the appellant's reply. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ.

### Constitutional Due Process

In his first assignment of error, the appellant claims the equal protection component of the Fifth Amendment to the Constitution of the United States was violated at his trial, and is being further violated now, because the military judges who presided at his trial, and the judges of this court, serve without the protection of a fixed term of office, whereas judges in the United States Army and United States Coast Guard enjoy such protection by regulation. We disagree, and decline to grant relief. *See Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994), *aff'd*, 517 U.S. 748 (1996).

### Sentence Severity

We find no merit in the appellant's claim that his sentence was inappropriately severe, and that "[d]isapproval of the dismissal and other parts of the approved sentence, with substitution of a reprimand," would be an appropriate resolution. Appellant's Brief of 27 May 2005 at 21. *See United States v. Healy*, 26 M.J. 394 (C.M.A. 1988); *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982). The appellant was a lieutenant commander in the United States Navy. On 15 September 2002, while serving as a nurse anesthetist, he was found drunk on duty at Naval Hospital, Camp Pendleton, California; was incapacitated for duty as a result of previous overindulgence in intoxicating liquor; and, while drunk, administered anesthesia, or made adjustments to anesthesia being administered to two female patients in labor. As a result of his intoxication, the appellant failed to timely respond to repeated pages from hospital personnel on his duty pager. After being relieved from duty, he disobeyed an order not to drive himself home, and drove a truck from Camp Pendleton to Oceanside, California, while drunk. In May 2001, the appellant received nonjudicial punishment for driving a car aboard Camp Pendleton with a blood alcohol concentration of 0.298 percent.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved by the convening authority.

I certify that, pursuant to Rule 19, CCA Rules of Practice and Procedure, a copy of this decision was served on appellate defense counsel on the decision date appearing thereon.

Docket Clerk, Navy-Marine Corps Court of Criminal Appeals

For the Court

R.H. TROIDL
Clerk of Court

2

# EXHIBIT B

IN THE UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

Before Panel No. 1



| | | |
|---|---|---|
| U N I T E D   S T A T E S, | ) | BRIEF AND ASSIGNMENT OF ERRORS |
| Appellee, | ) | |
| | ) | |
| v. | ) | Case No. NMCCA 200500012 |
| | ) | |
| DARRELL T. OPPERMANN | ) | |
| 467 86 1243 | ) | |
| Lieutenant Commander (O-4) | ) | |
| Nurse Corps, U.S. Navy, | ) | |
| | ) | |
| Appellant. | ) | |

Eugene R. Fidell
Matthew S. Freedus
Charlotte E. CVluverius
Feldesman Tucker Leifer
   Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, DC 20036
(202) 466-8960

Brian L. Mizer
Lieutenant, JAGC, USNR
Appellate Defense Division
(202) 685-7396

*Appellate Defense Counsel*

May 27, 2005



INDEX

*Page*

Introduction ................................................. 1

Issues Presented ............................................. 1

    I. WHETHER THE EQUAL PROTECTION COMPONENT OF FIFTH
       AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING
       VIOLATED AGAIN BECAUSE THE MILITARY JUDGES WHO
       PRESIDED AT TRIAL AND THE JUDGES OF THIS COURT SERVE
       WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE,
       WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH
       PROTECTION BY REGULATION

   II. WHETHER THE SENTENCE IS UNDULY SEVERE

Summary of Proceedings ....................................... 2

Statement of Facts ........................................... 4

Argument ..................................................... 4

    I.  THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE
       PROCESS WAS VIOLATED BELOW AND IS BEING FURTHER
       VIOLATED NOW BECAUSE THE MILITARY JUDGES AND THE
       JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A
       FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND
       COAST GUARD ENJOY SUCH PROTECTION BY REGULATION .......... 4

   II. THE SENTENCE IS UNDULY SEVERE ........................... 17

Conclusion ................................................... 22

APPENDIX

Army Regulation 27-10 (extract)

Coast Guard Military Justice Manual (extract)

TABLE OF CITATIONS

*Page*

*Cases:*

*Batson v. Kentucky,* 476 U.S. 79 (1986) .........................5
*Bolling v. Sharpe,* 347 U.S. 497 (1954) .........................5
*Frontiero v. Richardson,* 411 U.S. 677 (1973) ..................5
*Gallagher v. Quinn,* 363 F.2d 301 (D.C. Cir. 1966) ...........13
*Palmore v. United States,* 411 U.S. 389 (1973) ............9, 10
*Romer v. Evans,* 517 U.S. 620 (1996) ..........................12
*Sierra Club v. Costle,* 657 F.2d 298 (D.C. Cir. 1981) .........14
*Service v. Dulles,* 354 U.S. 363 (1957) .......................11
*United States ex rel. Accardi v. Shaughnessy,*
   347 U.S. 260 (1954) .......................................11
*United States v. Allen,* 31 M.J. 572 (N.M.C.M.R. 1990),
   *aff'd,* 33 M.J. 209 (1991) .................................5
*United States v. Baier,* 60 M.J. 382 (C.A.A.F. 2005) ..........21
*United States v. Bratcher,* 18 C.M.A. 125,
   38 C.M.R. 125 (1969) .......................................2
*United States v. Beyer,* NMCM 200201128 (N.M.C.C.A. 2005) .6, 7, 8
*United States v. Care,* 18 C.M.A. 535, 40 C.M.R. 247 (1969) .....3
*United States v. Courtney,* 1 M.J. 439 (1976) ..................6
*United States v. Douglas,* 57 M.J. 275 (2002) ................15
*United States v. Forney,* No. NMCM 200200462
   (N.M.C.C.A.) (pending) ....................................7
*United States v. Gaines,* 56 M.J. 321 (2002) (mem.) ...........6
*United States v. Gaines,* No. NMCM 200300828
   (N.M.C.C.A.) (pending) ....................................7
*United States v. Gallagher,* 15 U.S.C.M.A. 391,
   35 C.M.R. 363 (1965) ......................................13
*United States v. Graf,* 32 M.J. 809 (N.M.C.M.R. 1990),
   *aff'd,* 35 M.J. 450 (1992) .................................5
*United States v. Hoesing,* 5 M.J. 355 (C.M.A. 1978) .....7, 11, 12
*United States v. Huey,* NMCCA 200300278
   (N.M.C.C.A. 2004) (per curiam) ......................7, 8, 9
*United States v. Loving,* 41 M.J. 213 (1994) ............8, 9, 10
*United States v. Matthews,* 16 M.J. 354 (1983) ...............16
*United States v. McManus,* NMCM 200101372, 2003 CCA
   LEXIS 156 (N.M.C.C.A. 2003) ...............................21
*United States v. Penn,* 4 M.J. 879 (N.M.C.M.R. 1978) ..........11
*United States v. Quintanilla,* 60 M.J. 852
   (N.M.C.C.A. 2005) ..........................................7
*United States v. Rencher,* ACM 32655, 1998 CCA LEXIS 151
   (A.F.C.C.A), *pet. denied,* 50 M.J. 214 (1998) ..............12

*United States v. Robinson*, 39 M.J. 88 (1994) ................5
*United States v. Santiago-Davila*, 26 M.J. 380 1988) ...........5
*United States v. Tuggle*, 34 M.J. 89 (1992) ...................5
*United States v. Wright,* 48 M.J. 896 (A.F.C.C.A. 1998)
  *aff'd*, 53 M.J. 476 (2000) ...............................12
*Vitarelli v. Seaton*, 359 U.S. 535 (1959) ...................11
*Weiss v. United States*, 510 U.S. 163 (1994) ..............*passim*

*Constitution and Statutes:*

U.S. Constitution:
    Art. I ...................................................
    Art. III .................................................
    amend. 5 ................................................9
10 U.S.C. § 806a(a) ........................................6
10 U.S.C. § 867a(a) .......................................10
10 U.S.C. § 912a ..........................................11
10 U.S.C. § 942(b)(2) ......................................5
10 U.S.C. § 946(c)(2)(B)(i) ................................6
28 U.S.C. § 1259(3) .......................................10
28 U.S.C. § 1259(4) .......................................10
Uniform Code of Military Justice:
    Art.6a(a) ...........................................6, 14
    Art. 26(a) ..........................................7, 14
    Art. 36 ...............................................14
    Art. 36(b) .............................................6
    Art. 59(a) .............................................8
    Art. 66(a) .............................................7
    Art. 66(c) .........................................8, 12
    Art. 66(f) .............................................7
    Art. 66 ................................................
    Art. 67(a) .............................................9
    Art. 67a(a) ...........................................10
    Art. 112a .............................................11
    Art. 134 ...............................................3
    Art. 142(b)(2) .........................................5
    Art. 146(c)(2)(B)(i) ...................................6
Military Justice Act of 1983, Pub. L. No. 98-209:
    § 7(d), 97 Stat. 1402 (1983) .........................14
    § 8(a), 97 Stat. 1403 (1983) .........................11

*Regulations:*

MCM ¶ 14.c(2)(a)(iii) ......................................2
M.R.E. 413 ...............................................12
R.C.M. 201(e)(4) ..........................................15

iii

R.C.M. 503(b)(3) ............................................... 15
R.C.M. 901(e) .................................................. 3

*Miscellaneous*:

Kevin J. Barry, *A Reply to Captain Gregory E. Maggs's*
    *"Cautious Skepticism" Regarding Recommendations to*
    *Modernize the* Manual for Courts-Martial *Rule-Making*
    *Process*, 166 Mil. L. Rev. 37 (2000) ................... 11, 14
*Hearings on H.R. 2498 before a Subcomm. of the H. Comm.*
    *on Armed Services,* 81st Cong. (1949) ...................... 12
H.R. Rep. No. 81-491 (1949) ................................. 12
H.R. 1364, 109th Cong., 1st Sess............................. 10
Nat'l Inst. of Mil. J., M.J. Gaz No. 89 (Feb. 2001) .......... 10
S. Rep. No. 81-486 (1949) ................................... 12
James E. Valle, *Rocks and Shoals: Order and Discipline*
    *in the Old Navy, 1800-1861* (1980) ......................... 16

IN THE UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

Before Panel No. 1

| | | |
|---|---|---|
| U N I T E D   S T A T E S, | ) | BRIEF AND ASSIGNMENT OF ERRORS |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | Case No. NMCCA 200500012 |
| | ) | |
| DARRELL T. OPPERMANN | ) | |
| 467 86 1243 | ) | |
| Lieutenant Commander (O-4) | ) | |
| Nurse Corps, U.S. Navy, | ) | |
| | ) | |
| Appellant. | ) | |

TO THE HONORABLE, THE JUDGES OF THE
UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

### Introduction

This case also calls on the Court to address the application of the equal protection component of Fifth Amendment due process to military judicial terms of office. In due course we anticipate filing a motion for oral argument because of the significance of the first issue presented.

### Issues Presented

I

WHETHER THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING VIOLATED AGAIN BECAUSE THE MILITARY JUDGES WHO PRESIDED AT TRIAL AND THE JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION

## II

## WHETHER THE SENTENCE IS UNDULY SEVERE

### Summary of Proceedings

Lieutenant Commander Oppermann, a Navy nurse anesthetist, is a recovering alcoholic with nearly 19 years active duty. R. 27. He was tried in a general court-martial bench trial, Chester, J., at Camp Pendleton on May 16 and August 20, 2003.

The Charge Sheet follows R. 8. The charges included—

- two specifications (dereliction in failing to answer pages and disobedience of an order not to drive himself home) under Art. 92, UCMJ[1]

- one specification of making a false official statement (that his wife would be driving him home) under Art. 107, UCMJ

- one specification of drunk driving under Art. 111, UCMJ

- one specification of being drunk on duty under Art. 112, UCMJ, and

---

[1] The defense affirmatively disavowed any claim that the order underlying the disobedience specification was "simply an order to obey the law," R. 33; see *United States v. Bratcher*, 18 C.M.A. 125, 38 C.M.R. 125 (1969), or that it was "given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit." R. 33; see MCM ¶ 14.c(2)(a)(iii).

- three specifications under the General Article, Art. 134, UCMJ (wrongfully and recklessly engaging in conduct likely to cause death or serious bodily injury (two specifications) and being capacitated for the proper performance of his duties due to overindulgence in intoxicating liquor).

All of the charged misconduct was alleged to have occurred on the same day, September 15, 2002. Except for the Art. 107 charge and specification, to which he pleaded not guilty and which was withdrawn pursuant to a pretrial agreement, AE IV, LCDR Oppermann pleaded, R. 14,[2] and, after the required providency inquiry, R. 19-48; *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969); R.C.M. 910(e), was found guilty on each of the charges and specifications. R. 49. He entered into a stipulation of fact, AE II, even though none was required under the pretrial agreement. R. 20.

Colonel Chester ruled that the drunk on duty and incapacitation charges were multiplicious for sentencing purposes, R. 11. The government argued for only a dismissal, R. 204, and the defense argued against confinement. R. 208. In the end, Judge Chester sentenced LCDR Oppermann to be dismissed, to

---

[2] LCDR Oppermann admitted that the Art. 134, UCMJ, specifications were service-discrediting. R. 42-43.

be confined for nine months, and to forfeit $2,000 pay per month for nine months. R. 211.

On December 13, 2004, the convening authority approved the dismissal and suspended the confinement and forfeitures for 12 months in accordance with the quantum portion of the pretrial agreement. AE V. It is not immediately apparent why it took Major General Donovan so long to act.

LCDR Oppermann was placed on appellate leave and remains in that status pending appellate review. He lives in Fallbrook, California, with his wife and the couple's four children.

The case was docketed in this Court at February 2, 2005. This brief is timely filed. LCDR Oppermann respectfully invokes his right to a speedy review.

### Statement of Facts

The basic facts surrounding the offenses are set forth in a stipulation of fact. AE II. Additional facts are included as necessary in the Argument section.

### Argument

#### I

THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING FURTHER VIOLATED NOW BECAUSE THE MILITARY JUDGES AND THE JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION

4

Lieutenant Commander Oppermann's conviction must be set aside because the trial denied him due process of law. Additionally, this Court itself cannot act on his case for the same reason the trial was defective.[3]

The Fifth Amendment provides in pertinent part that "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." That Fifth Amendment due process is pertinent to military justice is beyond dispute. *Weiss v. United States*, 510 U.S. 163, 176 (1994). This case concerns the equal protection component of due process, *see Bolling v. Sharpe*, 347 U.S. 497 (1954), the applicability of which to the military justice system has been confirmed time and again.[4]   Additionally, the UCMJ itself obviously favors

---

[3] In an analogous situation, the Court, quoting its decision in *United States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (1991), denied a motion to disqualify for lack of terms of office on the basis that "where all are disqualified, none are disqualified." *United States v. Graf*, 32 M.J. 809, 813 n.3 (N.M.C.M.R. 1990), *aff'd*, 35 M.J. 450 (1992). While the *Graf* footnote indicates that it is futile for Chief Beyer to object here to the unprotected status of the Judges of this Court, we raise the issue in this brief not only to afford the Court an opportunity to address the matter but also in order to preserve the issue for review in the Court of Appeals, the Judges of which of course have the protection of statutory terms of office. Art. 142(b)(2), UCMJ, 10 U.S.C. § 942(b)(2).

[4] *E.g., United States v. Santiago-Davila*, 26 M.J. 380, 389-90 (1988), applying *Batson v. Kentucky*, 476 U.S. 79 (1986), and citing *Bolling* and *Frontiero v. Richardson*, 411 U.S. 677 (1973); *United States v. Robinson*, 39 M.J. 88, 89 & n.* (1994) (right to expert assistance); *United States v. Tuggle*, 34 M.J. 89, 91-92

uniformity.  *E.g.*, Art. 6a(a), 36(b), 146(c)(2)(B)(i), UCMJ, 10 U.S.C. §§ 806a(a), 836(b), 946(c)(2)(B)(i).

The military judge who presided at trial (like the Judges of this Court) did not have the protection of a fixed term of office, whereas trial and appellate military judges in the United States Army and Coast Guard do have the protection of fixed terms by service regulation.  This disparity violates the equal protection component of Fifth Amendment due process, even though, under *Weiss*, 510 U.S. at 176-81, due process *per se* does not require that military judges have such protection.  The current discrepancy across service lines in this core element of the judicial process, under a statute that Congress intended to be *uniform*, and in the absence of any cogent basis in law or in service exigencies for differential treatment, is arbitrary and capricious and denies those who stand accused the equal protection of the law.

This issue has been raised in several cases. Most recently, it was rejected in *United States v. Beyer*, NMCCA 200201128 (2005), at 3-4, which we discuss below. In *United States v.*

_____

(1992) (imprisonment solely because of inability to pay fine "would rise to a violation of the equal protection component of the Due Process Clause of the Fifth Amendment"); *United States v. Courtney*, 1 M.J. 439, 442 (1976) (2-1 decision) (equal protection violated by unfettered charging discretion for marijuana offenses; *held*, no rational justification for punishment differential).

*Gaines*, 56 M.J. 321 (2002) (mem.), the Court of Appeals denied a pretrial petition for extraordinary relief without prejudice. *Gaines* has now been briefed and is awaiting argument (albeit on other issues) before another panel. *United States v. Gaines*, NMCCA 200300828. The issue is before Panel 2 in *United States v. Forney*, NMCCA 200200462, was raised but not reached in *United States v. Quintanilla*, 60 M.J. 852, 854 (N.M.C.C.A. 2005), and was raised and denied at trial and on appeal in *United States v. Huey*, NMCCA 200300278 (N.M.C.C.A. 2004) (per curiam).

*Beyer* had the following to say about the equal protection issue:

> . . . The thrust of the appellant's position rests on the fact that two of our sister services, the Army and Coast Guard, have provided for fixed terms and that the Navy has declined to do so. The appellant then asserts that this alone deprives him of equal protection. We disagree.
>
> Congress has sanctioned distinctions between the services in authorizing each service secretary to prescribe regulations for the manner in which military judges are detailed. Art. 26(a), UCMJ. Congress has also sanctioned distinctions between the services in authorizing each Judge Advocate General to establish a Court of Criminal Appeals and to prescribe uniform rules of procedure for their respective Court of Criminal Appeals. Art. 66(a) and 66(f), UCMJ. "Congress has never required such uniformity among the services, and it has consistently authorized the Secretary of each armed force to promulgate regulations to meet special needs of his service, as determined by him." *United States v. Hoesing*, 5 M.J. 355, 358 (C.M.A. 1978).

We, therefore, conclude that the assignment of error has no merit. Accordingly, we decline to grant relief.

*Beyer*, of course, was unpublished and therefore does not serve as precedent. In any event, we respectfully submit that its cursory treatment of the issue is entirely inadequate and does not justify the result. The mere fact that Congress has not explicitly insisted on uniformity in the terms and conditions under which military trial and appellate judges serve says absolutely nothing about whether the discrepancy to which we point offends the equal protection component of Fifth Amendment due process. The reason *Beyer* ventured no further in attempting to justify its outcome on this issue may be that the government was unable to point to anything that served, as a practical matter, to distinguish the Navy and Marine Corps in so far as judicial terms of office are concerned. That failure, in our view, was fatal.

The 2004 *per curiam* in *Huey*—also unpublished and therefore equally non-precedential—is, if anything, even thinner gruel. Its entire treatment of the issue read as follows:

> The appellant asserts that his court-martial violated the equal protection component of the due process clause of the Fifth Amendment, because the military judge presiding over his case lacked the protection of a fixed term of office, whereas judges in the Army and the Coast Guard do enjoy such protection, and congress did not intend for such an inconsistent and unjust application of the UCMJ among the services to similarly situated servicemembers. We conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ; *Weiss v. United States*, 510 U.S. 163, 176-81 (1994)(holding that the lack of a fixed

term for military judges does not violate either the apportionment or due process clauses of the Fifth Amendment); *see generally United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994)(concluding that the differences between Article III courts and military courts do not violate the equal protection clause of the Fifth Amendment because an accused is entitled under Article 67a, UCMJ, to seek review by the Supreme Court, which is an Article III court).

This adds nothing to the conversation. *Weiss* nowhere does addressed an inter-service equal protection argument, and *Loving* is equally distinguishable. *Loving* had contended that, as a matter of equal protection, he had a right to review by an Article III court because civilian criminal defendants have such a right. The Court of Appeals easily disposed of this, properly pointing out that the Supreme Court recognized in *Palmore v. United States*, 411 U.S. 389 (1973), both the power of Congress to use Article I judges for criminal cases in the District of Columbia and the fact that state court judges do not enjoy life tenure and protection against diminution of salary. The Court of Appeals, as a third string to its bow, also pointed out that military accused do have access to an Article III court—the Supreme Court itself. While this latter point—which is the part of the Court of Appeals' treatment of *Loving*'s Issue LX on which *Huey* relied—is not well taken.[5] But none of this bears in the

---

[5] Military and civilian accused do not have comparable access to the Supreme Court: if the Court of Appeals denies a petition for grant of review, the Supreme Court cannot even entertain a

slightest on LCDR Oppermann's claim, since his argument does not seek to look across the divide to another basic court system, but rather rests simply on an indefensible discrepancy within the very same court system that is deciding his case: the military justice system created by the UCMJ. If *Loving* or *Palmore* had involved a claim that some District of Columbia criminal defendants (*e.g.*, those living in N.W.) in the courts of the District were tried by judges with a term of office while others (those living, say, in S.E.)—for no articulable reason did not—that would be a different matter. But that is simply not what was at issue in those cases, and they are therefore entirely inapposite.

After *Weiss*, the Army and the Coast Guard issued terms of office regulations for their trial and appellate military judges. *See* Appendix. The other services ultimately refused to do so, Nat'l Inst. of Mil. J., M.J. Gaz. No. 89, at 2 (Feb. 2001), apparently after having changed their minds on the subject. *See* Kevin J. Barry, *A Reply to Captain Gregory E.*

certiorari petition. 28 U.S.C. § 1259(3); Art. 67a(a), UCMJ, 10 U.S.C. § 867a(a). (A pending legislative proposal—discussed by Senior Judge Everett at the Code Committee's meeting on May 17, 2005—would fix the disparity with respect to refusals to grant extraordinary relief, *see* 28 U.S.C. § 1259(4), but its drafters apparently overlooked the much larger problem concerning denials of petitions for grant of review. *See* H.R. 1364, 109th Cong., 1st Sess. (2005).)

Maggs's "Cautious Skepticism" Regarding Recommendations to Modernize the Manual for Courts-Martial Rule-Making Process, 166 Mil. L. Rev. 37, 46-47 & n.41 (2000).

Given *Weiss*, the government had no due process duty to provide military judges with fixed terms of office, but *once it did so voluntarily*, it had to act in a way that comports with equal protection. *Cf. Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959)(agency bound by regulation it was not required to issue); *Service v. Dulles*, 354 U.S. 363, 377 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954).

There may indeed be situations in which the services can and should take divergent paths. *E.g., United States v. Hoesing*, 5 M.J. 355, 358 (1978) (inter-service distinctions permissible "to meet special needs of [individual] service");[6] *United States v. Penn,* 4 M.J. 879, 882-83 (N.M.C.M.R. 1978) (finding rational basis for "vessel exception" to right to refuse nonjudicial punishment). And where, as here, there is no suspect class or (given *Weiss*) fundamental right, all that is required is a demonstration of a rational basis for the discrepancy. *Romer v. Evans*, 517 U.S. 620 (1996), cited in

---

[6] Congress dealt with the disparate treatment of drug offenses by enacting Art. 112a, UCMJ, 10 U.S.C. § 912a, in 1983. Military Justice Act of 1983, Pub. L. No. 98-209, § 8(a), 97 Stat. 1403 (1983).

11

*United States v. Wright*, 48 M.J. 896, 901 (A.F.C.C.A. 1998) (upholding M.R.E. 413 in light of congressional objective of enhancing effective prosecution for sexual assaults), *aff'd*, 53 M.J. 476 (2000).

But we know of no reason that warrants the current divergence as to judicial terms of office. Moreover, the discrepancy here at issue is of a different type from that presented in *Hoesing*: here a core element of the trial (and appellate) process itself is different, whereas there it was the existence of differing punitive regulations. The services may well have different concerns that, based on their separate experiences, call for different kinds of punishment options.[7] That is a far cry from saying that they may go their separate

---

[7] Or actual punishments. *See United States v. Rencher*, ACM 32655, 1998 CCA LEXIS 151 (A.F.C.C.A.), *pet. denied*, 50 M.J. 214 (1998) (Snyder, Sr. J.) (citing loss of numbers as illustration of how services' "separate and diverse missions . . . dictate different needs and emphases on the many facets of good order and discipline; rejecting inter-service sentence comparisons). Judges Gamboa and Senander, concurring in the result, expressly declined to limit their future ability to conduct inter-service sentence comparisons. They have the better of the argument since the legislative history of the Code specifically declares Congress's intent regarding Art. 66(c): "It is contemplated that this power will be used to establish uniformity of sentences throughout the armed forces." H.R. Rep. No. 81-491, at 31-32 (1949); S. Rep. No. 81-486, at 28 (1949); *see also Hearings on H.R. 2498 before a Subcomm. of the H. Comm. on Armed Services,* 81st Cong. 1187 (1949).

ways on a structural feature as central as judicial independence.

An equal protection objection was raised with respect to the original Code's provision for appellate review as of right in cases involving flag and general officers. The provision was upheld in light of the special position of such officers. *See Gallagher v. Quinn*, 363 F.2d 301 (D.C. Cir. 1966). The District of Columbia Circuit, sailing in the wake of the Court of Appeals' decision in *United States v. Gallagher*, 15 U.S.C.M.A. 391, 35 C.M.R. 363 (1965), found nothing "unreasonable or irrelevant" so as to violate due process equal protection.

We do not disagree with *Gallagher*, but there at least one could point to longstanding congressional recognition of the special status of flag and general officers. Here, in contrast, the discrepancy at issue only arose when the Army and the Coast Guard promulgated terms of office regulations. That was only a few years ago, and Congress has done nothing since then that can be interpreted as ratification of the resulting discrepancy across service lines. There is therefore no basis for concluding, as the Court of Appeals did in *Gallagher*, that

13

anything has "imbedded it firmly in our system of military justice." 35 C.M.R. at 370.[8]

"[I]t is entirely within the power of the President to impose a system of tenure for military judges." Barry, *supra*, at 46. The power to "prescribe regulations providing for the manner in which military judges are detailed," which Congress conferred on the service secretaries, Art. 26(a), UCMJ, 10 U.S.C. § 826 (2000), does not preempt the President's authority either as Commander in Chief or under the terms of Art. 36, UCMJ, 10 U.S.C. § 836 (2000), to require that military judges have the protection of fixed terms of office. Nor does the grant of authority to the service secretaries render him powerless to require such action by subordinates who fail or refuse to do so on their own motion. *See Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981). Moreover, Congress has expressly recognized the President's role with regard to the fitness of military judges in Art. 6a(a), UCMJ, 10 U.S.C. § 806a(a) (2000) (requiring uniformity across service lines "[t]o the extent practicable"). Because there is in law and in fact a central authority that can bind the service departments despite their historic centrifugal tendency, the disparate treatment of

---

[8] Tellingly, Congress later repealed the provision. Military Justice Act of 1983, Pub. L. No. 98-209, § 7(d), 97 Stat. 1402 (1983).

14

which petitioner complains is not insulated from the Fifth Amendment's guarantee of equal protection of the laws as against the federal government.

The current arrangements are even more arbitrary and indefensible than appears on the surface. In addition to the fact that naval personnel such as LCDR Oppermann do not have the same measure of judicial independence protection as do members of the largest of the armed forces, they may also be denied that protection as a result of sheer fortuity. Military judges from one service may be detailed to a court-martial convened in another service when permitted by the military judge's Judge Advocate General. R.C.M. 503(b)(3); *see also* R.C.M. 201(e)(4). As a result, an officer whose case was tried by a Navy or, as here, a Marine Corps military judge would not have the benefit of the added judicial independence that comes with a fixed term of office, while his shipmate whose case happened to be presided over by an Army military judge *would* have that protection. Conversely, a member of the Army whose case happened to be heard by a Navy judge would lose the benefit conferred by the Army's terms of office regulation.

No member of the armed services should have his or her rights turn on such fortuities. *Cf. United States v. Douglas*, 57 M.J. 270, 275 (2002) (Baker, J., concurring in the result).

15

Moreover, simply as a matter of protecting the fisc (not to mention public policy), the Navy, Marine Corps and Air Force should not be afforded an incentive to eschew the economies that can be achieved through the cross-service assignment of military judges.

The current crazy quilt among the services with respect to terms of office is a scandal. It is also an unfortunate fact of history that the Navy has tended to resist change in the field of military justice. *See* James E. Valle, *Rocks and Shoals: Order and Discipline in the Old Navy, 1800-1861* 277 (1980). This case, like the others to which we have referred above, presents an excellent occasion to jettison that tradition (or at least dispel that impression). Since the Navy can, at least for the future, cure this problem by regulation, the Court may wish to defer for 90 days the effective date of its judgment as applied to other cases, in order to afford the Secretary of the Navy or the Judge Advocate General and, for that matter (should the Navy persist in its current policy) the Department of Defense and/or Congress an opportunity to fashion a suitable uniform term of office arrangement either by service regulation, *Manual* provision or statutory enactment. *Cf. United States v. Matthews*, 16 M.J. 354, 381-82 (1983).

16

The findings and sentence should be set aside with leave to conduct further proceedings presided over by a military judge who enjoys the same protection of a fixed term of office as that enjoyed by Army military judges.

## II

### THE SENTENCE IS UNDULY SEVERE

This is one of the saddest cases that can be imagined. LCDR Oppermann had a fine career (including service on USS *Ranger* and USS *Peleliu* (LHA-5), R. 154), had at one time been selected for promotion to Commander, R. 169, and was widely regarded as a talented, dedicated naval officer and nurse anesthetist. He'd been married for 19 years. R. 153. Now he is burdened by a 2000 NJP for drunk driving, R. 169; PE 2-3, and a stigmatizing federal conviction, he lost his promotion, R. 170; PE 5; DE B, his licensing status is at grave risk (and with it his ability to provide for his family's needs), and he stands to lose every benefit of the nearly 20 years he has worn the Nation's uniform. We believe the sentence was excessive in the circumstances of the case.

The facts are of course disturbing, and there is no question that LCDR Oppermann's conduct was seriously deficient. There are, however, important considerations on the other side of the ledger that should also be taken into account.

17

First, and without seeking in any way, shape, or form to evade personal responsibility for his misconduct, R. 188, it must at least be noted that the two obstetric patients who were undergoing anesthesia at the time of LCDR Oppermann's offenses were not harmed. R. 70. Each experienced a normal vaginal delivery. R. 77-78.[9] In very basic terms, as a practical matter there was no harm done on September 15, 2002. R. 60-61, 68. The Camp Pendleton hospital at all times had an anesthesia provider. R. 58. LCDR Oppermann's results were comparable with those of other nurse anesthetists. R. 114-15.

Like his parents, R. 157, LCDR Oppermann is an alcoholic. R. 137; see also R. 149. His prognosis at the time of trial was positive, R. 143, but it is a fact that his alcoholism had been a progressively deteriorating condition, R. 160, a fact of which the Navy was long aware. When his alcoholism emerged while he was stationed in Italy, R. 157, he went to his command for help, R. 158, and was seen at Rota, where staff incorrectly concluded that he did not have an alcohol problem. R. 85, 158. He was sent to a Level III facility but did not receive Level III treatment. R. 159. He went to AA, R. 160-61; PE 4, and counseling. R. 161.

---

[9] Each patient was fully briefed as to what had transpired, as one would expect. Neither one filed a tort claim against the government.

18

The counselor, unfortunately and inexplicably, advised that he probably was not an alcoholic. R. 161.

The Navy knew he still had an alcohol problem in 2001. R. 83. It should have been more proactive. R. 181. His wife brought the situation to the attention of the Navy. R. 164. LCDR Oppermann self-referred that year, R. 99, 165, as he had in 1989. PE 1. His department head knew he had a drinking problem and that he was seeking treatment for it. R. 115. The Navy did not put him in an inpatient treatment program, R. 167, which is where Scripps Hospital's McDonald's Center thought he should be. R. 172.

LCDR Oppermann understood well before the events that gave rise to this case that he needed inpatient treatment, and that outpatient programs would not work. Sadly, he was placed in a dilemma: to enter an inpatient program he would need an extended period of leave, and that would require him to tell the command that the Navy had previously misdiagnosed the severity of his condition and placed him in programs that were inadequate. He would also have to admit that his condition had grown worse, thus accelerating the likely end of his career. The alternative was to continue to rely on outpatient programs on the off chance they would ameliorate his addiction. In short, because they were inadequate, the Navy's well-intentioned responses to his problem

19

set him up for failure and effectively precluded any real opportunity to treat him with the intensity that was needed in the circumstances.

At one point LCDR Oppermann's wife threw him out of their home. R. 161. At another, she feared he would die in bed. R. 174. One of the few bright spots in this entire grim picture is that he never abused her or their children. R. 175.

The corrosive effects of LCDR Oppermann's alcoholism on himself, his wife, their four children, his career, and his physical and mental wellbeing describe a nightmare that most of us cannot even imagine. While he has made good progress in the inpatient and outpatient treatment he finally received after the events that gave rise to this case, PE 4; R. 95, 97-99, 128, 130, 140-41, 143, his life has been altered nearly beyond recognition. The likelihood of his being able to return to nursing is remote. At the time of trial he was providing child care, R. 156, while his wife had to re-enter the job market. R. 152.

LCDR Oppermann stated at trial that he understands his naval career is at an end. R. 195-96. That, however, does not mean the approved sentence is a fair one. We believe that in light of all the circumstances, it was excessive to stigmatize him with a dismissal—not to mention the sentence to confinement

. . . a punishment the government did not even seek, but which the military judge nonetheless imposed. At least the pretrial agreement saved LCDR Oppermann from prison, and for this he remains grateful.

This Court has shown itself to be mindful of the need to give individualized consideration in sentencing. Indeed, it has done so in a case involving grave sexual misconduct (forcible sodomy) where alcoholism was in the picture, and the accused did not have a sterling prior record. *United States v. McManus*, NMCM 200101372, 2003 CCA LEXIS 156 (N.M.C.C.A. 2003), slip op. at 9-10.[10] Applying the proper standard, *see generally United States v. Baier*, 60 M.J. 382 (C.A.A.F. 2005), a sentence to a reprimand would be sufficient in all of the sad circumstances of this case. LCDR Oppermann—sufferer from a serious, debilitating and stigmatizing illness—need not be left bleeding by the side of the legal highway for the rest of his life. Disapproval of the dismissal and other parts of the approved sentence, with substitution of a reprimand, is respectfully requested.

---

[10] *McManus* is nonprecedential and we do not cite it for *stare decisis* reasons, but as illustrative of the Court's overall stance in performing sentence appropriate review. Leave to refer to it is respectfully requested.

21

## Conclusion

For the foregoing reasons, the findings and sentence should be set aside and a reprimand substituted therefor.

Respectfully submitted,

*Eugene R. Fidell*

Eugene R. Fidell
Matthew S. Freedus
Charlotte E. Cluverius
Feldesman Tucker Leifer
    Fidell LLP
2001 L Street, N.W.
Washington, DC 20036
(202) 466-8960


*Eugene R. Fidell*
by Brian L. Mizer
Lieutenant, JAGC, USNR
Appellate Defense Division
(202) 685-7396

*Appellate Defense Counsel*

May 27, 2005

22

# A P P E N D I X



Army Regulation 27-10

Legal Services

# Military Justice

Headquarters
Department of the Army
Washington, DC
20 August 1999

**UNCLASSIFIED**

is not regulatory in nature and is subject to change as the cited regulatory sources change.

**7-2. Chaplains**
Chaplains will not be detailed as trial or defense counsel, investigating officers, or as members of courts-martial (AR 165-20, para 5-9).

**7-3. Medical, dental, and veterinary officers**

a. Except when regulations specifically stipulate to the contrary, medical, dental, and veterinary officers will not be—

(1) Detailed as members of courts-martial, nonjudicial boards, or committees.

(2) Detailed as other duties in which medical training is not essential.

b. Similarly, every effort consistent with due process of law will be made to protect officers of the Army Medical Department (in medical officers for use in court-martial, boards, or committees) from being required in investigating officers or members of courts-martial, nonjudicial boards, or committees (in preference to requiring them from active duty, active duty retirees, and so forth, who are not medical officers) when a medical officer or medical witness is to present testimony in person, (AR 40-1, paras 2-3 h, 2-4 c, and 3-11.)

**7-4. Army nurses**
The applicable portion of paragraph 7-3 above governs the use of Army Nurse Corps officers. However, when Army Nurse Corps officers or other mental service personnel are involved in the proceeding (AR 40-1, para 2-30) they may be detailed as members of courts-martial, nonjudicial boards, or committees.

**7-5. Medical specialist corps**
The applicable portions of paragraph 7-3 above govern the use of Medical Specialist officers. However, when Army Medical Specialist officer or other medical service, physical, or occupational therapy personnel are involved in the proceeding (AR 40-1, para 2-35) they may be detailed as members of courts-martial, nonjudicial boards, or committees.

**7-6. Inspectors general (IG)**

a. Officers assigned to IGs will not be appointed as investigating officers under articles 32 or 138, UCMJ. AR 15-6, or any other officers (appointment of Article 32 or 138 investigation of officers or witnesses) or each, offer the appointment of investigating officers and members of courts-martial; nor will they be prevented from serving. They may have apprehending important witnesses or members of courts-martial or the HQDA staff similar duties that may be disqualifying. (See the HQDA and operation or being detailed as an investigation or officer under article 32/138, para 2-33), they may be detailed as members of courts-martial, nonjudicial boards, or committees.

b. A NCO assistant to IGs should not be given other duties that would disqualify them from performing their IG duties (AR 20-1, para 1-7 j).

c. Investigating officer appointed under the provisions of Article 32, UCMJ, and LCUA 406(00).

d. Investigating officer if a formally court martial, statute, liability, or rights of an officer senior in grade or date of rank.

**7-7. Warrant officers**
Warrant officers are expressly prohibited from performing additional duties—

a. A member of any court-martial at the trial of any officer senior in grade or date of rank.

b. A Trial counsel or defense counsel in the appointment or assistant defense counsel of a Special or GCM.

(1) Individual counsel when legally qualified in the manner of Article 27(b), UCMJ.

(2) Appropriate records will be maintained by TIAG as follows:

---

**Chapter 8**
**United States Army Trial Judiciary—Military Judge Program**

**8-1. General**

a. Judge Program. The Military Judge Program is a system in which military judges are designated and detailed to operation of the Military Judge Program and prescribes procedures to be followed in administering it. This regulation implements Article 26, UCMJ, which provides for an independent judiciary within the U.S. Army.

b. Organization. The Trial Judiciary is an element of the U.S. Army Trial Judiciary, which is in turn an element of the USALSA.

c. Military judge of a court-martial.

(1) A military judge detailed to all GCMs. A military judge who may be detailed to SPCM, unless a military judge cannot be made available because of physical conditions or military exigencies; in which a military judge is not detailed to an SPCM, the reason (the unavailability of a military judge) shall be included within the record of trial. Only the convening authority who will make a detail decision or convening authority who will make that determination will not be a reason for failure to detail a military judge.

(2) A military judge will be a commissioned officer of the U.S. Army on active duty who is—

(a) A member of the bar of a Federal court or a member of the bar of the highest court of a State.

(b) Certified to be qualified for duty as a military judge by TIAG.

d. Chief Trial Judge. A military trial judge who is designated by TIAG (para 1-4 b) as the chief of military judges of GCMs and TIAG.

e. GCM/j military judge. A military trial judge who is assigned to the US Army Trial Judiciary, with the primary duty of providing over GCMs and SPCMs to which he or she is detailed. A military judge will not be a resident and assigned as a member of a GCM or SPCM. A military judge is a member of the U.S. Army Trial Judiciary whose primary duty is to preside over SPCMs to which he or she is detailed. A military judge who is certified and detailed to the Trial Judiciary for a minimum of three years, except under any of the following circumstances:

f. Tenure for military trial judges.

(1) The military judge is assigned to other duties by TIAG for good cause, such as when officers are normally reassigned or retired, or each of the officer's term has expired; his or her tour of duty has expired, in such cases the military judge is unavailable for reassignment to be reassigned to other duties or to be reassigned to the certified member of the Trial Judiciary is also certified by TIAG approval such assignment.

(2) The military judge retires or otherwise resigns from military service.

(3) The military judge is reassigned to other duties by TIAG based on the needs of the service in a time of war or national emergency.

(4) The military judge is removed as a military judge for cause. See Section III, Chapter 16, Suspension of TIAG for good cause. See Section III, Chapter 16, Suspension of TIAG for good cause.

**8-2. Qualifications of military judges**

a. A military judge is a JA who has been certified by TIAG as qualified to preside over a GCM and/or SPCM. Before performing duties as a military judge of a GCM, a JA must be—

(1) Certified by TIAG as qualified for duty as a military judge.

(2) Designated by TIAG or his or her designee for detail as a military judge.

**13-10. Cases remanded by the USACCA or USCAAF**

a. When a decision of the USACCA or USCAAF directs or authorizes further proceedings, the accused must...

**13-11. Leave or arrest for pending appellate review**

**13-12. Tenure for military appellate judges**

1. The military judge voluntarily requests to be reassigned to other duties, and TJAG approved such assignment.

2. The Military judge retires or otherwise separates from military service.

3. The military judge is reassigned to other duties by TJAG based on the needs of the service in a time of war or national emergency.

4. The officer's certification as a military judge is withdrawn by TJAG for good cause. See Section III, Chapter 16, Suspension of Military Judge.

**Chapter 14**

**Application for Relief under Article 69, UCMJ**

**14-1. General**

**14-2. Procedures for relating application**



U.S. Department
of Transportation

United States
Coast Guard





## MILITARY JUSTICE MANUAL
### COMDTINST M5810.1D



MILITARY JUSTICE MANUAL                                        CHAPTER 6
COMMANDANT INSTRUCTION M5810.1D          COURTS-MARTIAL MISCELLANEOUS

**6.D.3.      Designation of Special Court-Martial Judges**

All personnel certified as qualified for duty as military judges by TJAG are designated as
part-time special court-martial military judges. Detail of individual judges to specific
cases shall be in accordance with the procedures prescribed in paragraph 3.H.1 above.

**6.D.4.      Procedure for Revocation of Certification of Military Judge or Counsel**

*[See, section 6.G below.]*

## 6.E. TENURE FOR MILITARY TRIAL AND APPELLATE JUDGES

**6.E.1.      Military Trial Judges**

A military trial judge, including the Chief Trial Judge, is assigned for a minimum of three
years, except when he or she:

       a.       Assumed the duty as trial judge on a less than three-year basis or re-
quests to be reassigned to other duties, and the Chief Counsel approves such assignment;

       b.       Retires or otherwise separates from military service;

       c.       Is reassigned to other duties by the Chief Counsel based on the needs of
the service in time of war or national emergency;

       d.       Is reassigned, as a line officer or within the legal program to another
billet, under the normal personnel assignment process based on the needs of the service
and without regard to any prior performance of judicial duties; or,

       e.       Is temporarily, indefinitely, or permanently suspended from practice as a
military trial judge by TJAG [General Counsel, Department of Transportation] for good
cause [see, section 6.G below.].

**6.E.2.      Appellate Judges**

An appellate judge is assigned to the United States Coast Guard Court of Criminal Ap-
peals for a minimum of three years, except when he or she:

       a.       Assumed the duty as appellate judge on a less than three-year basis or
requests to be reassigned to other duties, and the Chief Counsel, in consultation with
TJAG, approves such assignment;

       b.       Retires or otherwise separates from military service;

c    Is reassigned to other duties by the Chief Counsel, in consultation with TJAG, based on the needs of the service in time of war or national emergency;

d.    Is reassigned, as a line officer or within the legal program to another billet outside the Washington, DC area, under the normal personnel assignment process based on the needs of the service and without regard to any prior performance of judicial duties; or,

e.    Is temporarily, indefinitely, or permanently suspended from practice as an appellate judge by TJAG for good cause [*see*, section 6.G below.].

## 6.F. CERTIFICATION OF COUNSEL UNDER ARTICLE 27(b), UCMJ

### 6.F.1.    General

In addition to the requirements stated in RCM 502, each attorney is expected to meet the qualifications listed below in order to become certified in accordance with Article 27(b), UCMJ.

### 6.F.1.a.    Designation as Law Specialist

Each attorney serving in a legal program billet is expected to obtain designation as a law specialist. Authority to designate attorneys as law specialists has been delegated to the Chief Counsel. Requests for designation as a law specialist shall be made to the Chief Counsel and shall include the information required by Article 6.A.6, Coast Guard Personnel Manual, COMDTINST M1000.6 (series). Requests may be submitted in writing or may be made online through the Chief Counsel's web site. When requesting certification online, copies of the applicant's law degree and bar license or card must be faxed to G-LPD to complete the application.

### 6.F.1.b.    Basic Lawyer Course

Each law specialist must successfully complete the Basic Lawyer Course conducted by the Naval Justice School or the Basic Judge Advocate Course conducted by the U.S. Army or Air Force. [Note: Designation as a law specialist is not a prerequisite to attend the Basic Lawyer Course.] Waivers of this requirement may be granted on a case-by-case basis and must include a positive recommendation from the SJA requesting the waiver. Waiver requests should also include a listing of all military justice on-the-job training such as assistant counsel at courts-martial, comparable prior trial experience in civilian courts or previous certification in one of our sister services.

### 6.F.2.    Certification

Personnel already designated as law specialists will normally receive Article 27(b), UCMJ certification and be sworn in upon graduation from the Basic Lawyer Course at

Certificate of Filing and Service

I certify that the foregoing Brief and Assignment of Errors was served, this 27th day of May, 2005, by sending copies thereof to the Clerk of the Court and to:

Director
Appellate Government Division
NAMARA, Building 111
Washington Navy Yard, DC 20374

*Eugene R. Fidell*

Eugene R. Fidell

# EXHIBIT C

IN THE UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

Before Panel No. 1

| | | |
|---|---|---|
| UNITED STATES, | | ANSWER ON BEHALF OF THE GOVERNMENT |
| | Appellee | |
| v. | | Case No. 200500012 |
| Darrell T. OPPERMANN | | Tried at Camp Pendleton, California |
| 467 86 1243 | | on 16 May & 20 August 2004 |
| Lieutenant Commander | | by General Court-Martial |
| (O-4) | | Convened by Commanding General, |
| U.S. Navy, | | Marine Corps Base |
| | Appellant | |

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES
NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS

### Statement of the Case

A general court-martial composed of a military judge alone convicted Appellant, in
accordance with his pleas, of dereliction of duty, failure to obey a lawful order, operating a
vehicle while drunk, being found drunk on duty, wrongfully and recklessly engaging in conduct
likely to cause death or serious bodily harm, and being incapacitated for duty through prior
wrongful indulgence in intoxicating liquor, in violation of Articles 92, 111, 112, and 134,
Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 911, 912 & 934.  Appellant was
sentenced to confinement for 9 months, forfeiture of $2,000.00 pay per month for a period of 9
months, and a dismissal from the Naval Service. The convening authority approved the sentence
as adjudged and, pursuant to a pretrial agreement, suspended all confinement and forfeitures for
a period of 12 months from the date of the convening authority's action.

ORIGINAL

## Statement of Facts

On 15 September 2002, Appellant was assigned and stood duty at the Camp Pendleton Naval Hospital as the hospital nurse anesthetist. Appellate Exhibit. II at 1. In this capacity, Appellant was the sole provider of anesthesia service throughout the hospital on that date, including the labor and delivery area and the emergency room. Record at 36-37; Appellate Ex. II at 1. Appellant was responsible for administering anesthetics to patients and overseeing the patients to whom they had been administered. Appellate Ex. II at 1. This required him to respond to pages from other medical personnel at the hospital for requests concerning anesthesia services. R. at 32. Notwithstanding his weighty responsibilities, Appellant began drinking gin after arriving at the hospital that day. R. at 29-30. In fact, he drank more than a pint of gin. R. at 30. Appellant became drunk and, not knowing whether they represented emergencies or not, failed to respond to a number of pages requesting anesthesia services and/or consultations, claiming he was "getting [him]self together." R. at 28-32, 73; Appellate Ex. II at 1. Appellant also administered anesthesia to two patients while he was under the influence of alcohol. R. at 37; Appellate Ex. II at 2. Eventually, hospital personnel noticed Appellant's face looked flushed and that he smelled of alcohol. R. At 39. A staff doctor ordered Appellant to appear for a fitness for duty examination. R. at 40. Appellant was given a blood alcohol test and relieved of duty late in the afternoon on 15 September 2002. Appellate Ex. II at 1. The result of Appellant's blood alcohol content test was .333 grams per 100 milliliters of blood, more than 3 times the standard for being drunk under military law. R. at 41; Appellate Exhibit II at 2. Subsequent to submitting to the blood alcohol test, Appellant was ordered not to drive his vehicle. Appellate Exhibit II at 2. Notwithstanding the order, which Appellant heard and understood, Appellant knowingly violated it by driving his pickup truck to an off-base motel. R. at 34-35; Appellate

2

Ex. II at 2. Appellate admits he was still drunk when he did so. R. at 36. Those remaining facts necessary to a disposition of the assigned errors are included in the argument, *infra*.

### Errors Assigned

#### I.

THE EQUAL PPROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING FURTHER VIOLATED NOW BECAUSE THE MILITARY JUDGES AND THE JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION.

#### II.

THE SENTENCE IS UNDULY SEVERE.

### Argument

#### I.

THE APPELLANT FAILS TO ESTABLISH THE LACK OF FIXED TERMS OF OFFICE FOR NAVY MILITARY JUDGES VIOLATES HIS RIGHT TO EQUAL PROTECTION OF THE LAW UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT SINCE NO OTHER SERVICE JUDGES HAVE TRUE FIXED TERMS. TO THE EXTENT THE SERVICES DIFFER REGARDING THE TERMS UNDER WHICH THEIR RESPECTIVE JUDGES SERVE, THOSE DIFFERENCES ARE VALID UNDER THE VERY DEFERENTIAL RATIONAL BASIS REVIEW APPLIED TO DUE PROCESS ANALYSIS.

It is now well settled that the Due Process Clause of the Fifth Amendment applies to servicemembers at court-martial. *United States v. Graf,* 35 M.J. 450, 454 (C.M.A 1992). It is also firmly established that Fifth Amendment due process includes an equal protection component, *Bolling v. Sharpe,* 347 U.S. 497 (1954), which, generally speaking, dictates that "persons similarly situated should be treated alike." *City of Cleburn v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). Not all disparate treatment by the Government, however, rises to the

3

level of an equal protection violation. In fact, when the Government has neither discriminated

on the basis of a suspect classification, nor denied an accused a fundamental right, the

Government's varied treatment of service members will not be disturbed so long as there is a

rational basis for any distinctions made. *United States v. Means*, 10 M.J. 162, 165 (C.M.A.

1981).

Appellant asserts that the lack of fixed terms for Navy-Marine Corps judges, specifically

the judge that presided over his court-martial and the members of this Court, violates the equal

protection component of the Due Process Clause, given that Army and Coast Guard judges enjoy

set terms of office. Appellant's Brief of 27 May 2005 at 4-17. Noting the Supreme Court's

opinion in *United States v. Weiss*, 35 M.J. 450 (CMA 1992)(holding that servicemembers do not

have a fundamental right under the Fifth Amendment to be tried by military judges with set

terms of office), appellant effectively concedes his case does not implicate a fundamental right.

Appellant's Brief at 5. Thus, there can be no dispute that a rational basis review is appropriate in

this case. Nevertheless, appellant contends that once the Army and Coast Guard issued terms of

office regulations for their trial and appellate military judges, the Navy was required to follow

suit in order to avoid violating appellant's due process rights. Appellant's Brief at 6. The failure

to do so, appellant argues, was "arbitrary and capricious" and therefore fails even rational basis

review. *Id.* Appellant's claim, however, is plainly wrong.

As an initial matter, appellant's assertion that Army and Coast Guard judges have "fixed

terms" is not wholly accurate. In actuality, the judges of these respective services are subject to

the same personnel decisions that Navy judges potentially encounter. For example, under the

Coast Guard model, although judges have established 3-year terms of office, they may be

removed from their positions "under the normal personnel assignment process based on the

4

needs of the service ...." Commandant Instruction M5810.1D, Chapter 6, Section E.1 and E.2

(17 August 2000). Army judges may similarly be removed from office "based on the needs of

the service in time of war or national emergency," or "for good cause." Army Regulation 27-10,

Chapter 13, Section 12 (20 August 1999). Thus, these judges really do not serve under so-called

"fixed terms," but rather, under terms that may be liberally modified at the discretion of those

making personnel decisions in these respective services.

Furthermore, these "terms" are hardly different from the Navy system where all judges

receive orders (of set duration) and may be removed only for proper reasons. The only

difference is that Navy judges, in theory, could be removed for no reason at all, while Army

Coast Guard judges can only be removed for a specified reason. Practically speaking, however,

this is a distinction without substance, because a Navy judge would never be removed on a mere

whim. If a Navy judge were to be removed based upon his or her rulings, such action would

clearly be illegal and punishable by court-martial. *See Graff,* 35 M.J. at 471 (holding that

exercising the power to decertify judges or transfer a judge based on disagreements with the

appropriateness of the judge's rulings violates Articles 26 and 37, UCMJ); *see also* Article 98,

UCMJ (making it unlawful to intentionally fail to enforce or comply with the procedural

obligations under the UCMJ). Thus, there really is no "unequal" treatment of service members

tried by judges from the different services.

Even assuming these regulations cause service members to be treated "differently," the

distinct approaches to judicial assignments among the respective services clearly meet the very

deferential rational basis standard of review. There are numerous possible explanations why the

Navy declined to implement so-called "fixed terms." For example, the Secretary of the Navy (or

Judge Advocate General (JAG)) may have determined that limiting the mobility of military

5

judges, who tend to possess the greatest expertise in the area of military justice, would not best serve the fluctuating and evolving needs of the Navy. One need look only to the military justice needs implicated by Operation Iraqi Freedom, Operation Enduring Freedom, and the related military tribunals to appreciate this point. Should the JAG be called on to provide military justice expertise on short notice, he has the ability to draw from the best human resources available (including from the Court) to respond to that call.

Similarly, the Secretary of the Navy may have decided that having the ability to place a particular judge advocate on the bench (and thereby replacing another individual) at a specific time will ensure that the necessary training and career development of judge advocate officers can be accomplished. For example, if a particular judge advocate were to be selected to serve in an important position requiring military justice expertise, having the ability to place that judge advocate in a position within the judiciary in order to augment his or her military justice experience prior to taking his ultimate assignment makes sense. On the other hand, having to wait until set terms expire might impede these efforts.

Additionally, there is the consideration that the Navy's Judge Advocate General's Corps is considerably smaller than those of the Army and Air Force, yet no less deployable world-wide. That fact alone justifies the additional flexibility in the allocation and deployment of judge advocates that a lack of fixed terms provides.

The Navy's approach has been endorsed in at least one other setting. Under the Military Justice Act of 1983, the Secretary of Defense was required to set up an advisory commission to consider, *inter alia*, whether military judges should have "tenure." Pub.L. No. 98-209, 97 Stat. 1393 (1983). That Commission ultimately recommended against providing set terms to military trial and appellate judges. Military Justice Act of 1983 Advisory Commission Report (1984) at

6

8-9. Thus, the rationale supporting the Navy approach has been recognized even at the Congressional level.

Finally, this Court should also consider our superior court's decision in *United States v. Hoesing*, 5 M.J. 355 (C.M.A. 1978). In that case, the Court addressed the issue of whether the equal protection component of the Due Process Clause permitted differing punishments for the same conduct among the various services.[1] The Court answered that question in the affirmative. To hold otherwise, the Court found, would be to allow the service secretary of one service to promulgate regulations affecting the administration of justice in another service. 5 M.J. at 358. Congress never intended that result, the Court said, and to allow it would be unacceptable. *Id*.

> In permitting the Secretary of each service to propound regulations for the government of his respective service, Congress sanctioned distinctions between the treatment of personnel in the various services. While the issue in this case relates to the punishment of an act in violation of the Uniform Code of Military Justice, appellant's argument for interservice equality of treatment would require all services to adopt the same punitive regulations[ ] . . . Congress has never required such uniformity among the services, and it has consistently authorized the Secretary of each armed force to promulgate regulations to meet special needs of his service, as determined by him.

5 M.J. at 358. If regulations permitting servicemembers to be exposed to and receive different punishments for the same conduct across the various services does not violate the equal protection component of the Due Process Clause, then there is no reason to find that differing regulations regarding the terms of military and appellate judges does.

The justifications addressed above firmly establish a rational basis for the distinctions in the Navy system challenged by appellant. Under the precedent of the Supreme Court, this Court should be satisfied that the manner in which military judges are assigned in the Navy comports

---

[1] The accused claimed that the fact that the Coast Guard and Navy, by regulation, allowed certain drug prosecutions under Art. 92, UCMJ that the Army and Air Force regulations required to be prosecuted under Art. 134, UCMJ violated equal protection.

7

with Constitutional Due Process. *See Heller v. Doe,* 509 U.S. 312, 319 (1993)(noting that "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.")(citation omitted); *see also FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 320 (1993)(noting that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," which "must be upheld against an unequal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Since the distinctions raised by appellant are not based on a suspect classification and do not involve a denial of a fundamental due process right, this Court should defer to the sound judgment of those best suited to determine the appropriate balance between a desire for an independent military judiciary, and the need for maximum flexibility. *See Goldman v. Wienberger,* 475 U.S. 503, 508 (1986)(citing *Rostker v. Goldberg*, 453 U.S. 57 (1981))(holding that judicial deference "is at its apogee" when Congress acts pursuant to its broad grant of authority to regulate the land and naval forces).

8

II.

WHERE A NURSE ANESTHETIST IN A NAVAL HOSPITAL WAS DRUNK ON DUTY, FAILING TO RESPOND TO PAGES, ADMINISTERING ANESTHESIA TO TWO PATIENTS WHILE DRUNK, HIS BLOOD TESTED AT MORE THAN THREE TIMES THE LEGAL LIMIT, AND WHERE HE VIOLATED AN ORDER AND DROVE HIS TRUCK WHILE STILL DRUNK, A SENTENCE THAT INCLUDES CONFINEMENT AND A DISMISSAL IS ENTIRELY APPROPRIATE. APPELLANT'S SENTENCE IS PARTICULARLY APPROPRIATE GIVEN HIS LONG HISTORY OF ALCOHOL PROBLEMS, THE OPPORTUNITIES HE WAS GIVEN TO ADDRESS HIS DEPENDENCE, AND HIS PRIOR ALCOHOL RELATED DISCIPLINARY RECORD.

A court-martial is free to impose any legal sentence it deems appropriate. *United States v. Turner*, 14 U.S.C.M.A. 435, 437; 34 C.M.R. 215, 217 (1964); RCM 1002. An appropriate sentence results from an "individualized consideration" based upon "the nature and seriousness of the offense and character of the offender." *United States v. Rojas*, 15 M.J. 902, 919 (N.M.C.M.R. 1983), *citing United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982), *aff'd*, 20 M.J. 330 (C.M.A. 1985). Courts of Military Review are tasked with determining sentence appropriateness, not clemency. Clemency is a grant of mercy entirely within the prerogative of the convening authority. *United States v. Healy*, 26 M.J. 394, 395-6 (C.M.A. 1988.).

This case did not represent Appellant's first experience with military justice, nor was it his first alcohol related incident. In 1989, Appellant referred himself for alcohol treatment and received Level III treatment. Pros. Ex. 1. In February 2001, after again referring himself for treatment, Appellant drove his vehicle while intoxicated and reported for work in a similar state. Pros. Ex. 2 at 2; Pros. Ex. 4 at 1. This incident resulted in his attending a 14-day intensive outpatient treatment program with a yearlong follow-on recovery program. Pros. Exs. 4 at 1. It also resulted in his being taken to captain's mast, where he received a punitive letter of

9

reprimand. Pros. Ex. 2 & 3. Beginning in April of 2001, Appellant attended Alcoholic's

Anonymous meetings three times weekly, right up until he committed the offenses at issue.

Pros. Ex. 4 at 1, 3-5.

The military judge set forth on the record the repeated opportunities Appellant had to

address his dependency and correct his behavior. R. at 210. Yet Appellant did not do so. After

his name was removed from the list for promotion to Commander, Pros. Ex. 5 at 4-5, Appellant

stated how the April 2001 driving under the influence incident and resulting captain's mast

constituted a "wake up call." Pros. Ex. 5 at 3. "One which [sic] I have taken to heart.". *Id.*

Apparently that was not the case. Instead, Appellant drove while intoxicated again and, as the

military judge pointed out, R. at 209-211, repeatedly placed his own concerns above those of his

family, his patients, and the general public. Appellant could have asked for time off from work

for additional treatment but did not, citing career concerns. R. at 172, 188; *see also* Appellant's

Brief at 19. He could have reported that he was unable to fulfill his responsibilities instead of

risking the lives of his patients by administering anesthesia while he was drunk but didn't. R. at

41-42. This was also, presumably, because of career concerns. He could have followed orders

and waited for his wife to come and pick him up from the hospital but didn't. Instead, he drove

while drunk to a motel because he realized his career was, in effect, over and wanted to "get

away from the Command, from the Base." R. at 35.

Appellant's conduct was extremely serious. As he himself admitted, R. at 39,

administering anesthesia to patients while he was drunk could easily have resulted in death or

serious injury to those patients. The same could be said for his driving while drunk. It is only by

the grace of God that no deaths or injuries occurred. Against this background, Appellant's

argument of "no harm, no foul," *see* Appellant's Brief at 18, is shockingly irresponsible.

Not satisfied with that argument, Appellant argues that his conduct is actually the Navy's fault. Appellant's Brief at 18-20. This starkly contrasts with Appellant's admission at trial that he was responsible for his own actions. R. at 199. Appellant now, however, paints a picture of a helpless alcohol-dependent victim who has been disserved by the Navy. Human beings, however, are ultimately responsible for their own decisions and actions. Appellant is no exception. The alcohol dependency that led to his committing the instant offenses is Appellant's responsibility and no one else's. He must answer for it.

Finally, Appellant argues that this Court should disapprove the sentence approved by the convening authority and instead approve only a reprimand. Such an argument ignores the fact that Appellant already received a reprimand at captain's mast for driving while drunk, without apparent effect on his behavior. Moreover, the instant charges are both more extensive and serious than what was before the commanding officer at the April 2001 captain's mast. All notions of deterrence, general and specific, demand that the approved sentence extend beyond a mere reprimand. The Government respectfully submits that a dismissal is an eminently appropriate punishment for someone of Appellant's rank and experience committing the acts at issue in this case. Appellant was a commissioned officer. There simply is no place in the U.S. Navy for officers who commit the crimes to which Appellant has pled "Guilty." Accordingly, the Government respectfully requests this Court to affirm the sentence as adjudged and approved below.

A full and fair reading of Appellant's entire record of trial compels the conclusion that Appellant's sentence resulted from an individualized consideration based on the nature and seriousness of the offenses and the character of the offender. That is all the law requires. *Rojas* at 919; *Snelling* at 268. Appellant's argument amounts to a plea for clemency, which has already

11

been denied by the convening authority. Appellant's sentence is legal and appropriate and should be affirmed as adjudged and approved below.

## Conclusion

WHEREFORE, the Government respectfully requests that this Court affirm the findings and sentence as adjudged and approved below.

R. W. SARDEGNA
*Lieutenant Commander, JAGC,*
*U.S. Naval Reserve*
*Appellate Government Counsel*

12

### Certificate of Filing and Service

I certify the foregoing was delivered to the Court, filed electronically, a copy was delivered to detailed appellate defense counsel, and a copy was mailed to civilian appellate defense counsel on 27 July 2005.

R. W. SARDEGNA
*Lieutenant Commander, JAGC,*
*U.S. Naval Reserve*
*Appellate Government Counsel*

# EXHIBIT D

IN THE UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

Before Panel No. 1

| | | |
|---|---|---|
| U N I T E D   S T A T E S, | ) | APPELLANT'S REPLY BRIEF |
| | ) | |
| *Appellee,* | ) | |
| | ) | |
| v. | ) | Case No. NMCCA 200500012 |
| | ) | |
| DARRELL T. OPPERMANN | ) | |
| 467 86 1243 | ) | |
| Lieutenant Commander (O-4) | ) | |
| Nurse Corps, U.S. Navy, | ) | |
| | ) | |
| *Appellant.* | ) | |

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES
NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS

I

THE GOVERNMENT HAS FAILED TO JUSTIFY EITHER THE
IRRATIONAL DISCREPANCY AMONG THE SERVICES WITH
RESPECT TO THE TENURE OF MILITARY JUDGES OR
THE FACT THAT MEMBERS OF THE SAME SERVICE
MAY, AS A MATTER OF SHEER FORTUITIES,
BE TRIED BY JUDGES WITH OR WITHOUT
FIXED TERMS OF OFFICE

The government's response (Answer at 3-8) to Lieutenant
Commander Oppermann's objection to the irrational discrepancy
among the services with respect to the tenure of military judges
and the judges of the Courts of Criminal Appeals is
insufficient. Because Appellant is therefore entitled to prevail
on this issue, the Court need not reach Issue II.

**ORIGINAL**

A. The government observes (at 5) that "[t]he only difference [between the Navy's judicial arrangements and those of the Army and Coast Guard] is that Navy judges, in theory, could be removed for no reason at all, while Army and Coast Guard judges can only be removed for a specified reason. Practically speaking, however, this is a distinction without substance, because a Navy judge would never be removed on a mere whim."

No reasonable observer would agree that there is no difference in these arrangements. Nor is the government's soothing assurance that the Navy "would never" remove a judge on a mere whim any protection at all. Judicial independence depends not on promises or predictions but on procedures. (As President Reagan said of the Soviet Union, "Trust, but verify.") The Navy (and Marine Corps) arrangements are utterly at-will; the Army and Coast Guard are not. This fundamental error in the government's analysis is fatal to its effort to defend the disparity.

B. As a fallback position, the government claims (at 5) that "there are numerous possible explanations why the Navy declined to implement so-called 'fixed terms.'" "Numerous" here means "three," none of which withstands scrutiny.

(1) "[T]he Secretary of the Navy (or Judge Advocate General (JAG)) *may have* determined that limiting the mobility of military judges, who tend to possess the greatest expertise in the area of military justice, would not best serve the fluctuating and evolving needs of the Navy." Answer at 5-6 (emphasis added). This hypothesis adds nothing to the conversation, since each of the armed forces experiences "fluctuating and evolving needs."

The lack of force in this first hypothetical justification is further demonstrated by the government's attempt to develop the point. Its brief goes on to recite (at 6):

> One need look only to the military justice needs implicated by Operation Iraqi Freedom, Operation Enduring Freedom, and the related military tribunals to appreciate this point. Should the JAG be called on to provide military justice expertise on short notice, he has the ability to draw from the best human resources available (including from the Court) to respond to that call.

There are two fatal problems with this explanation. First, each of the three examples on which it rests was and is a multi-service effort, and as a result these examples do not justify why the Navy is in any pertinent way differently situated from the Army and Coast Guard for purposes of adopting a term of office for trial and appellate military judges. Second, this part of the Navy's theoretical rationale, even if it were valid, would go no further than lending support to the kind of escape

hatch the Army and Coast Guard regulations already contain, which obviously refer to war or national emergency. Accordingly, this part of the government's theoretical justification actually does not furnish any support for the at-will environment in which the Navy and Marine Corps insist their judiciaries try to dispense justice.

(2) The government's second hypothetical basis for the discrepancy (at 6) is that the Secretary "may have decided that having the ability to place a particular judge advocate on the bench (and thereby replacing another individual) at a specific time will ensure that necessary training and career development can be achieved." The fatal defect with this second rationale is that it does not even pretend to distinguish the organizational, operational or personnel circumstances of the Navy and Marine Corps from those of the Army and Coast Guard.

(3) Finally, the Navy invokes (at 6) the "consideration" that the JAG Corps "is considerably smaller than those of the Army and Air Force, yet no less deployable world-wide. That fact alone justifies the additional flexibility in the allocation and deployment of judges advocates that a lack of fixed terms provides."

This hypothesis—one that the government had not asserted in earlier cases in which this issue was raised—assumes that

4

flexibility in personnel assignments is a function simply of overall Corps end strength. That is clearly not the case, but even if numbers alone were the test, one wonders why the Coast Guard, which (a) has far fewer judge advocates and (b) deploys worldwide, has found it possible to live with a terms-of-office regulation. Mere smallness is not a rational basis for dispensing with terms of office.

Corps size is also not an immutable "given" such that the conversation is over before it begins. The government does not claim that the Judge Advocate General has sought and been thwarted in efforts to secure additional judge advocates. There is not a whisper of this, for example, in the reports he has submitted in recent years as part of the Annual Report of the Code Committee on Military Justice. With particular respect to the appellate stages of military justice, his response to the Court of Appeals' December 22, 2004 Order to Show Cause in *Rodriguez-Rivera v. Navy-Marine Corps Court of Criminal Appeals*, No. 05-8007/NA, stated in pertinent part:

> The appellate review activities are staffed consistent with the operational needs of the Navy and Marine Corps and authorized manpower limits. They are currently manned sufficiently to accomplish the mission identified in Article 66, UCMJ and Article 70, UCMJ.

Reproduced at *Rodriguez-Rivera v. United States*, 61 M.J. 19, 24 (2005) (mem.).

5

Surely if the Judge Advocate General believed more lawyers were needed to meet the needs of the service, he would have said so somewhere. There is therefore every reason to believe that in his opinion, the Corps over which he presides is the proper size. If that is the case, then it follows that there is nothing *inherent* in either the size of the naval services' judge advocate workforce or their exposure to deployment that distinguishes those services from others that have implemented terms of office. Since all of the armed services would be similarly situated in this respect, this factor therefore drops out of the equation as a justification for disparate judicial tenure arrangements.

Obviously, it would be the fantasy of any Judge Advocate General—like any senior commander, and regardless of branch of service or branch size—to have as many officers as possible in his or her Corps to deal with the smallest possible per-lawyer workload. But fantasies are not enough to justify the disparity here at issue.

C. The government's remaining alleged justifications for the disparity complained of are not really justifications so much as legal arguments, and as legal arguments they fail:

(1) The fact that the Military Justice Act of 1983 Advisory Commission did not recommend fixed terms (Answer at 6-7) speaks

6

only to whether fixed terms should be required at all, not to whether one branch or another ought to be treated differently for objectively verifiable reasons.

(2) We addressed *United States v. Hoesing*, 5 M.J. 355 (1978), in our Brief and Assignment of Errors at pp. 11 *et seq.* As the extract reproduced by the government itself indicates (at 7), disparity among the services is acceptable if necessary "to meet special needs of [the service secretary's] service, as determined by him." 5 M.J. at 358. This record, however, provides no basis for finding that the Secretary of the Navy ever made a "determin[ation]" concerning fixed terms of office—silence and inaction are not a "determin[ation]." Nor, even now, as already explained, has opposing counsel been able to conjure up even a colorable basis in fact for distinguishing the Navy and Marine Corps from the Army and Coast Guard—much less one that actually (as opposed to in the fertile imagination of appellate government counsel) inspired some decision (if indeed there ever was one) not to do as the Army and Coast Guard have done.

Moreover, *Hoesing* only deals with one kind of disparity across service lines. It says nothing about the further irrationality that arises from the fact that even members of the *same* service may find themselves tried (or their appeals heard)

7

by judges who serve under materially different terms: at-will or defined. We clearly identified this in our Brief and Assignment of Errors at 15. The government is understandably silent as the point is unanswerable.

In order to prevail on Issue I, the Navy must be able to point to some rational basis for the inter-service discrepancy and irrationality to which Lieutenant Commander Oppermann has drawn attention. This it has failed to do.

## II

### THE SENTENCE IS UNDULY SEVERE

When a party puts language in quotation marks, and follows it with a citation to the other side's brief, the obvious implication that the quoted words appear in that brief. As a result, when we read "Appellant's argument of 'no harm, no foul,' *see* Appellant's Brief at 18, is shocking irresponsible" on page 10 of the government's Answer, we rushed to re-read that page of our Brief and Assignment of Errors, only to find (as we thought), that those words nowhere appear. Indeed, we prefaced the pertinent paragraph with the words "without seeking in any way, shape, or form to evade personal responsibility for his misconduct." We never said there was no foul; only that there was no harm. There is a difference, and much as the adversary system permits a measure of harsh rhetoric, there is no excuse of distorting Lieutenant

8

Commander Oppermann's position, as the government has done in this respect.

As for the government's suggestion (at 11), that there is something indecent in Appellant's calling attention to the Navy's failure to be more proactive in the face of his obvious alcoholism, what we note above all in the Answer is the complete absence of any quarrel with our recitation of the facts in that regard.

Equally missing is any recognition of Lieutenant Commander Oppermann's service to the Navy over many years. He's not asking for a medal. He's just asking that all the facts and circumstances—the positive as well as the negative—be taken into account. The government's Answer fails to do so, but instead reads like a trial counsel's argument on sentence. That may be fine at trial, and—as just indicated—the rhetoric may be harsh and yet proper. But we are past the point of trial. The heat of battle is over, and appeals to emotion have no place. This is the time for mature and conscientious reflection, rather than formulaic claims (Answer at 11) that "[t]here is simply no place in the Navy for officers who commit the crimes to which Appellant has pled 'Guilty.'" That kind of inelastic thinking, reminiscent of the "wooden ships and iron men" naval justice chronicled by Prof. Valle, *see generally* James E. Valle, *Rocks & Shoals: Order and*

9

*Discipline in the Old Navy, 1800-1861* (1980), was long ago rejected by the Court of Military Appeals. *United States v. Rinehart*, 8 C.M.A. 402, 24 C.M.R. 212 (1957); *United States v. Davis*, 8 C.M.A. 425, 24 C.M.R. 235 (1957).

We believe that mature reflection in light of all the circumstances, which is what the law contemplates, counsels disapproval of the dismissal.

### Conclusion

For the foregoing reasons and those previously stated, the findings and sentence should be set aside and a reprimand substituted therefor.

Respectfully submitted,

FOR

Eugene R. Fidell
Matthew S. Freedus
Charlotte E. Cluverius
Feldesman Tucker Leifer
    Fidell LLP
2001 L Street, N.W.
Washington, DC 20036
(202) 466-8960

Brian L. Mizer
Lieutenant, JAGC, USNR
Appellate Defense Division
(202) 685-7396

*Appellate Defense Counsel*

August 5, 2005

10

Certificate of Filing and Service

I certify that the foregoing Reply Brief was served, this 5th day of August, 2005, by hand-delivering copies thereof to the Clerk of the Court and to:

LCDR R.W. Sardegna, JAGC, USNR
Appellate Government Division
NAMARA, Building 111
Washington Navy Yard, DC 20374

Brian L. Mizer

# EXHIBIT E

IN THE UNITED STATES COURT OF APPEALS
FOR THE ARMED FORCES

| | | |
|---|---|---|
| U N I T E D   S T A T E S, | ) | PETITION FOR GRANT OF REVIEW |
| | ) | |
| *Appellee,* | ) | |
| | ) | |
| v. | ) | Crim. App. Dkt. No. |
| | ) | NMCCA 200500012 |
| DARRELL T. OPPERMANN* | ) | |
| 467 86 1243 | ) | |
| Lieutenant Commander (O-4) | ) | USCA Dkt. No. *06-0731/NA* |
| Nurse Corps, U.S. Navy, | ) | |
| | ) | |
| *Appellant.* | ) | |

TO THE JUDGES OF THE UNITED STATES COURT OF APPEALS
FOR THE ARMED FORCES:

The undersigned counsel, on behalf of Lieutenant Commander
Darrell T. Oppermann, hereby petition the United States Court of
Appeals for the Armed Forces for a grant of review of the June
29, 2006 decision of the Court of Criminal Appeals on appeal
under Article 66, UCMJ, 10 U.S.C. § 866, pursuant to the
provisions of Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3).

Respectfully submitted,

*Eugene R. Fidell*

Eugene R. Fidell (Bar No. 13979)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036

---

* Appellant's surname has two "n"s. The caption on the decision
below is incorrect.

(202) 466-8960 Tel
(202) 293-8103 Fax
efidell@feldesmantucker.com

*Eugene R. Fidell*

LT Brian L. Mizer, JAGC, USNR
(Bar No. 33030)
Appellate Defense Division
Navy-Marine Corps Appellate
    Review Activity
716 Sicard Street, S.E.
Suite 1000
Washington Navy Yard, DC 20374
(202) 685-7396 Tel
(202) 685-7426 Fax
brian.mizer@navy.mil

*Attorneys for Appellant*

July 5, 2006

## Certificate of Filing and Service

I certify that the original and seven copies of the foregoing Petition for Grant of Review were delivered to the Court on July 5, 2006, and that a copy thereof was mailed, first-class postage prepaid, to the Director, Appellate Government Division, Navy-Marine Corps Appellate Review Activity, 716 Sicard St., S.E., Suite 1000, Washington Navy Yard, DC 20374, on July 5, 2006.

*Eugene R. Fidell*

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960

2

IN THE UNITED STATES COURT OF APPEALS FOR
THE ARMED FORCES

U N I T E D   S T A T E S,

      *Appellee,*

          v.

Darrell T. Oppermann,
Lieutenant Commander (O-4),
Nurse Corps,
U.S. Navy,

      *Appellant.*

SUPPLEMENT TO PETITION
FOR GRANT OF REVIEW

USCA Dkt. No. 06-0731/NA

Crim.App. No. 200500012

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES
COURT OF APPEALS FOR THE ARMED FORCES

BRIAN L. MIZER
LT, JAGC, USNR
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps Appellate Review Activity
716 Sicard Street, SE, Suite 1000
Washington Navy Yard, DC 20374
(202) 685-7290

EUGENE R. FIDELL
Bar No. 13979
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW
Second Floor
Washington, DC 20036
(202) 466-8960

*Appellate Defense Counsel*

July 21, 2006

## QUESTION PRESENTED

WHETHER THE EQUAL PROTECTION COMPONENT OF FIFTH AMEND-
MENT DUE PROCESS WAS VIOLATED AT TRIAL AND IN THE
COURT OF CRIMINAL APPEALS WHERE THE MILITARY JUDGE AND
THE JUDGES OF THAT COURT SERVE WITHOUT THE PROTECTION
OF A FIXED TERM OF OFFICE, WHILE THOSE IN THE ARMY AND
COAST GUARD ENJOY SUCH PROTECTION BY REGULATION?

## TABLE OF CONTENTS

Page

Question Presented .......................................... ii

Table of Authorities ........................................ iv

Statement of Statutory Jurisdiction .......................... 1

Statement of the Case ........................................ 1

Statement of Facts ........................................... 2

Reason to Grant Review ....................................... 3

    THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE
    PROCESS WAS VIOLATED AT TRIAL AND IN THE COURT OF
    CRIMINAL APPEALS WHERE THE MILITARY JUDGE AND THE
    JUDGES OF THAT COURT SERVE WITHOUT THE PROTECTION OF A
    FIXED TERM OF OFFICE, WHILE THOSE IN THE ARMY AND
    COAST GUARD ENJOY SUCH PROTECTION BY REGULATION .......... 3

Conclusion ................................................... 9

Appendix .................................................... 10

Certificate of Service ...................................... 10

iii

# TABLE OF AUTHORITIES

Page

DECISIONS OF THE SUPREME COURT OF THE UNITED STATES

*Batson v. Kentucky*, 476 U.S. 79 (1986) .................... 4

*Bolling v. Sharpe*, 347 U.S. 497 (1954) .................... 4

*Frontiero v. Richardson*, 411 U.S. 677 (1973) ............. 4

*Hamdan v. Rumsfeld*, 548 U.S. __ (2006) .................... 4

*Romer v. Evans*, 517 U.S. 620 (1996) ...................... 6

*United States v. Loving*, 517 U.S. 748 (1996) ............. 2

*Weiss v. United States*, 510 U.S. 163 (1994) ... 2, 3, 4, 5, 6

DECISIONS OF UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES AND COURT OF MILITARY APPEALS

*United States v. Courtney*, 1 M.J. 439 (C.M.A. 1976) ....... 4

*United States v. Gaines*, 56 M.J. 321 (2002) .............. 5

*United States v. Gaines*, 62 M.J. 377 (2006) .............. 5

*United States v. Gallagher*, 15 C.M.A. 391, 35 C.M.R. 363 (1965)............................................. 7

*United States v. Grostefon*, 12 M.J. 431 (1992) ........... 3

*United States v. Hoesing*, 5 M.J. 355 (C.M.A. 1978) ..... 5, 6

*United States v. Loving*, 41 M.J. 213 (C.A.A.F. 1994) ...... 2

*United States v. Reister*, 44 M.J. 409 (C.A.A.F. 1996) ..... 3

*United States v. Robinson*, 39 M.J. 88 (C.M.A. 1994) ....... 3

*United States v. Santiago-Davila*, 26 M.J. 380 (C.M.A. 1988)................................................. 4

*United States v. Tuggle*, 34 M.J. 89 (C.M.A. 1992) ........ 4

DECISIONS OF THE SERVICE COURTS OF CRIMINAL APPEALS

*United States v. Allen*, 31 M.J. 572 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (1991)............................. 3

*United States v. Graf*, 32 M.J. 809 (N.M.C.M.R. 1990), *aff'd*, 35 M.J. 450 (1992)............................ 3

*United States v. Oppermann*, No. 200500012 (N-M. Ct. Crim. App. 2006)................................... 1, 2

*United States v. Penn*, 4 M.J. 879 (N.M.C.M.R. 1978) ....... 5

*United States v. Rencher*, ACM 32655, 1998 CCA LEXIS 151 (A.F. Ct. Crim. App.), *pet. denied*, 50 M.J. 214 (1998)............................................... 6

*United States v. Wright*, 48 M.J. 896 (A.F. Ct. Crim. App. 1998), *aff'd*, 53 M.J. 476 (2000)................. 6

iv

FEDERAL CIRCUIT COURT CASES

*Gallagher v. Quinn*, 363 F.2d 301 (D.C. Cir. 1966) ......... 7
*Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981) ...... 8

CONSTITUTION, STATUTES AND RULES

U.S. Const. amend. 5 ................................... 2, 3, 4
Military Justice Act of 1983, Pub. L. No. 98-209,
    97 Stat. 1402 (1983) ................................. 7
Uniform Code of Military Justice, 10 U.S.C. §§ 801 *et seq.*:
    Article 6a(a) ...................................... 4, 8
    Article 26(a) ........................................ 8
    Article 36 ........................................... 8
    Article 36(b) ........................................ 4
    Article 66(b)(1) ..................................... 1
    Article 66(c) ........................................ 6
    Article 67(a)(3) ..................................... 1
    Article 91 ........................................... 1
    Article 111 .......................................... 1
    Article 112 .......................................... 1
    Article 134 .......................................... 1
    Article 146(c)(2)(B)(i) .............................. 4
C.A.A.F.R. 21(b)(5)(A) ................................... 9
Mil. R. Evid. 413 ....................................... 6
R.C.M. 201(e)(4) ........................................ 9
R.C.M. 503(b)(3) ........................................ 9

MISCELLANEOUS

Kevin J. Barry, *A Reply to Captain Gregory E. Maggs's*
    *"Cautious Skepticism" Regarding Recommendations to*
    *Modernize the Manual for Courts-Martial Rule-Making*
    *Process*, 166 Mil. L. Rev. 37 (2000) ............... 5, 8
Eugene R. Fidell, Dwight H. Sullivan & Detlev F. Vagts,
    *Military Commission Law*, Army Lawyer, Dec. 2005 ............. 4
*Hearings on H.R. 2498 before a Subcomm. of the H. Comm. on*
    *Armed Services,* 81st Cong. (1949) .......................... 6
H.R. Rep. No. 81-491 (1949) ............................... 6
National Institute of Military Justice, M.J. Gaz. No. 89
    (Feb. 2001) ............................................. 5
S. Rep. No. 81-486 (1949) ................................. 6

## STATEMENT OF STATUTORY JURISDICTION

The Navy-Marine Corps Court of Criminal Appeals had juris-
diction pursuant to Article 66(b)(1), Uniform Code of Military
Justice, 10 U.S.C. § 866(b)(1). The jurisdiction of this Court
is invoked under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3).

## STATEMENT OF THE CASE

A military judge, sitting as a general court-martial, con-
victed Appellant, pursuant to his pleas, of dereliction in the
performance of his duties, failure to obey a lawful order,
physically controlling a vehicle while drunk, being drunk on
duty, wrongfully and recklessly engaging in conduct that was
likely to cause death or serious bodily harm (two specifica-
tions), and being incapacitated for the proper performance of
his duties as a result of wrongful previous overindulgence in
intoxicating liquor, in violation of Articles 91, 111, 112, and
134, UCMJ, 10 U.S.C. §§ 892, 911, 912, and 934.

Appellant was sentenced to confinement for nine months,
forfeiture of $2,000 pay per month for nine months, and to be
dismissed from the United States Navy.  The convening authority
approved the adjudged sentence, but suspended the confinement
and forfeitures pursuant to a pretrial agreement.  On June 29,
2006, the lower court affirmed the findings and sentence.[1]

---

[1] *United States v. Oppermann*, No. 200500012 (N-M. Ct. Crim. App.
2006) (reproduced in Appendix).

1

Appellant timely filed a petition for grant of review on July 5, 2006.

### STATEMENT OF FACTS

Appellant stands convicted of dereliction in the performance of his duties, failure to obey a lawful order, physically controlling a vehicle while drunk, being drunk on duty, two specifications of wrongfully and recklessly engaging in conduct that was likely to cause death or serious bodily harm, and being incapacitated for the proper performance of his duties as a result of wrongful previous overindulgence in intoxicating liquor.

The military judges who presided at trial and sat on the Navy Court lacked fixed terms of office, in contrast to their counterparts in the United States Army and Coast Guard. Copies of the Army and Coast Guard regulations are attached.

The Navy Court's complete analysis of the Question Presented was as follows:

> We disagree, and decline to grant relief. *See Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994), *aff'd*, 517 U.S. 748 (1996).

Slip op. at 2.

2

## REASON TO GRANT REVIEW[2]

**THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED AT TRIAL AND IN THE COURT OF CRIMINAL APPEALS BECAUSE THE MILITARY JUDGE AND THE JUDGES OF THAT COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION**

Appellant's conviction must be set aside because the trial denied him due process of law. Additionally, the Navy Court itself could not act on his case for the same reason the trial was defective.[3] This issue of law is subject to *de novo* review.[4]

The Fifth Amendment provides in pertinent part that "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." That Fifth Amendment due process is pertinent to military justice is beyond dispute.[5] This case concerns the equal protection component of due proc-

---

[2] Appellant has been advised of his rights under *United States v. Grostefon*, 12 M.J. 431 (1982), and has no further issues we wishes to have the Court consider.

[3] In an analogous situation, the Navy Court, quoting its decision in *United States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (1991), denied a motion to disqualify for lack of terms of office on the basis that "where all are disqualified, none are disqualified." *United States v. Graf*, 32 M.J. 809, 813 n.3 (N.M.C.M.R. 1990), *aff'd*, 35 M.J. 450 (1992). While the *Allen* footnote indicates that it was futile for Appellant to object there to the unprotected status of the judges of that court, we raised the issue below not only to afford the Navy Court an opportunity to address the matter but also in order to preserve the issue for review here.

[4] *E.g., United States v. Reister*, 44 M.J. 409, 413 (1996).

[5] *Weiss, supra*, 510 U.S. at 176.

ess,[6] the applicability of which to the military justice system has been confirmed time and again.[7]

Additionally, the UCMJ itself obviously favors uniformity.[8] The military judge who presided at Appellant's trial (like the judges of the Navy Court) did not have the protection of a fixed term of office, whereas trial and appellate military judges in the United States Army and Coast Guard do have the protection of fixed terms by service regulations. *See* Appendix. This disparity violates the equal protection component of Fifth Amendment due process, even though, under *Weiss*, due process *per se* does not require that military judges have such protection. The current discrepancy across service lines in this core element of the judicial process, under a statute that Congress intended to

---

[6] *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

[7] *E.g., United States v. Santiago-Davila*, 26 M.J. 380, 389-90 (1988), applying *Batson v. Kentucky*, 476 U.S. 79 (1986), and citing *Bolling* and *Frontiero v. Richardson*, 411 U.S. 677 (1973); *United States v. Robinson*, 39 M.J. 88, 89 & n.* (1994) (right to expert assistance); *United States v. Tuggle*, 34 M.J. 89, 91-92 (1992) (imprisonment solely because of inability to pay fine "would rise to a violation of the equal protection component of the Due Process Clause of the Fifth Amendment"); *United States v. Courtney*, 1 M.J. 439, 442 (1976) (2-1 decision) (equal protection violated by unfettered charging discretion for marijuana offenses; *held*, no rational justification for punishment differential).

[8] *E.g.*, Articles 6a(a), 36(b), 146(c)(2)(B)(i), UCMJ. In *Hamdan v. Rumsfeld*, 548 U.S. __, __ (2006), the Court construed Article 36(b) to require uniformity as between courts-martial and military commissions. *But see* Eugene R. Fidell, Dwight H. Sullivan & Detlev F. Vagts, *Military Commission Law*, Army Lawyer, Dec. 2005, 47, 48 n.10.

4

be *uniform*, and in the absence of any cogent basis in law or in service exigencies for differential treatment, is arbitrary and capricious and denies those who stand accused the equal protection of the law.  This is a recurring issue[9] and the Court should address it.

After *Weiss*, the Army and the Coast Guard issued terms of office regulations for their trial and appellate military judges.  The other services ultimately refused to do so,[10] apparently after having changed their minds on the subject.[11]

Given *Weiss*, the government had no due process duty to provide military judges with fixed terms of office, but *once it did so voluntarily*, it had to act in a way that comports with equal protection.  There may indeed be situations in which the services can and should take divergent paths.[12]  And where, as here,

---

[9] The issue was raised here in another Navy case on pretrial petition for extraordinary writ which the Court denied without prejudice. *United States v. Gaines*, 56 M.J. 321 (2002) (mem.).  *Gaines* is the subject of a pending petition for grant of review.  *United States v. Gaines*, 62 M.J. 377 (2006) (No. 06-0127/NA).  The issue has also been raised in a number of other Navy cases.

[10] National Institute of Military Justice, M.J. Gaz. No. 89, at 2 (Feb. 2001).

[11] *See* Kevin J. Barry, *A Reply to Captain Gregory E. Maggs's "Cautious Skepticism" Regarding Recommendations to Modernize the Manual for Courts-Martial Rule-Making Process*, 166 Mil. L. Rev. 37, 46-47 & n.41 (2000).

[12] *E.g., United States v. Hoesing*, 5 M.J. 355, 358 (1978) (inter-service distinctions permissible "to meet special needs of [individual] service"); *United States v. Penn*, 4 M.J. 879, 882-83 (N.M.C.M.R. 1978) (finding rational basis for "vessel exception" to right to refuse nonjudicial punishment).

there is no suspect class or, given *Weiss*, a fundamental right, all that is required is a demonstration of a rational basis for the discrepancy.[13]

But we know of no reason—and the decision below cites none—that warrants the current inter-service disparity as to judicial terms of office.  Moreover, the discrepancy here at issue is of a different type from that presented in *Hoesing*: here a core element of the trial (and appellate) process itself is different, whereas there it was the existence of differing punitive regulations.  The services may well have different concerns that, based on their separate experiences, call for different kinds of punishment options.[14]  That is a far cry from saying

_____

[13] *Romer v. Evans*, 517 U.S. 620 (1996), cited in *United States v. Wright*, 48 M.J. 896, 901 (A.F. Ct. Crim. App. 1998) (upholding M.R.E. 413 in light of congressional objective of enhancing effective prosecution for sexual assaults), *aff'd*, 53 M.J. 476 (2000).

[14] Or actual punishments. *See United States v. Rencher*, ACM 32655, 1998 CCA LEXIS 151 (A.F. Ct. Crim. App.), *pet. denied*, 50 M.J. 214 (1998) (Snyder, Sr. J.) (citing loss of numbers as illustration of how services' "separate and diverse missions . . . dictate different needs and emphases on the many facets of good order and discipline; rejecting inter-service sentence comparisons). Judges Gamboa and Senander, concurring in the result, expressly declined to limit their future ability to conduct inter-service sentence comparisons.  They have the better of the argument since the legislative history of the Code specifically declares Congress's intent regarding Article 66(c):  "It is contemplated that this power will be used to establish uniformity of sentences throughout the armed forces." H.R. Rep. No. 81-491, at 31-32 (1949); S. Rep. No. 81-486, at 28 (1949); *see also Hearings on H.R. 2498 before a Subcomm. of the H. Comm. on Armed Services,* 81st Cong. 1187 (1949).

that they may go their separate ways on a structural feature as central as judicial independence.

An equal protection objection was raised with respect to the original Code's provision for appellate review as of right in cases involving flag and general officers.  The provision was upheld in light of the special position of such officers.[15]  The District of Columbia Circuit, sailing in the wake of this Court's decision in *United States v. Gallagher*,[16] found nothing "unreasonable or irrelevant" so as to violate due process equal protection.

We do not disagree with *Gallagher*, but in that case at least one could point to longstanding congressional recognition of the special status of flag and general officers.  Here, in contrast, the discrepancy at issue only arose when the Army and the Coast Guard promulgated terms of office regulations.  That was only a few years ago, and Congress has done nothing since then that can be interpreted as ratification of the resulting discrepancy across service lines.  There is therefore no basis for concluding, as this did in *Gallagher*, that anything has "imbedded it firmly in our system of military justice."[17]

---

[15]   *See Gallagher v. Quinn*, 363 F.2d 301 (D.C. Cir. 1966).

[16]  15 C.M.A. 391, 35 C.M.R. 363 (1965).

[17]  35 C.M.R. at 370.   Congress later repealed the provision. Military Justice Act of 1983, Pub. L. No. 98-209, § 7(d), 97 Stat. 1402 (1983).

7

"[I]t is entirely within the power of the President to impose a system of tenure for military judges."[18] The power to "prescribe regulations providing for the manner in which military judges are detailed," which Congress conferred on the service secretaries, Article 26(a), UCMJ, does not preempt the President's authority either as Commander in Chief or under the terms of Article 36, UCMJ, to require that military judges have the protection of fixed terms of office. Nor does the grant of authority to the service secretaries render him powerless to require such action by subordinates who fail or refuse to do so on their own motion.[19]  Moreover, Congress has expressly recognized the President's role with regard to the fitness of military judges in Article 6a(a), UCMJ (requiring uniformity across service lines "[t]o the extent practicable").

The current arrangements are even more arbitrary and indefensible than may appear at first glance.  In addition to the fact that Navy personnel such as Appellant do not receive the same measure of judicial independence protection as do members of both the largest and smallest of the armed forces, they may also be denied that protection as a result of sheer fortuity. Military judges from one service may be detailed to a court-

---

[18] Barry, *supra*, at 46.

[19] *See Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981).

martial convened in another service when permitted by the military judge's Judge Advocate General.[20]

As a result, a Naval officer whose case was tried by a Navy (as here) or a Marine Corps military judge would not have the benefit of the added judicial independence that comes with a fixed term of office, while his or her shipmate whose case happened to be presided over by a Coast Guard or Army military judge *would* have that protection. Conversely, a member of the Coast Guard whose case happened to be heard by a Navy judge would lose the benefit conferred by the Coast Guard's Military Justice Manual's terms of office regulation. These outcomes are absurd and indefensible.

### CONCLUSION

The petition should be granted because the Navy Court has decided an important question of constitutional law that has not been, but should be, decided by this Court. C.A.A.F.R. 21(b)(5)(B).

Respectfully submitted,

*Eugene R. Fidell*

*by* BRIAN L. MIZER, LT, JAGC, USNR
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps Appellate Review Activity
716 Sicard Street, SE, Suite 1000

---

[20] R.C.M. 503(b)(3); *see also* R.C.M. 201(e)(4).

Washington Navy Yard, DC 20374
(202) 685-7396

*Eugene R. Fidell*

EUGENE R. FIDELL
Bar No. 13979
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW
Second Floor
Washington, DC 20036
(202) 466-8960

*Appellate Defense Counsel*

July 21, 2006

## APPENDIX

*United States v. Oppermann*, NMCCA 200500012 (N-M. Ct. Crim. App. 2006)

Army Regulation 27-10 (extract)

Coast Guard Military Justice Manual (extract)

## CERTIFICATE OF FILING AND SERVICE

I certify that the original and seven copies of the foregoing Supplement to Petition for Grant of Review were hand-delivered to the Court on July 21, 2006, and that a copy was mailed to the Appellate Government Division, Navy-Marine Corps Appellate Review Activity on July 21, 2006.

*Eugene R. Fidell*

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW
Second Floor
Washington, DC 20036
(202) 466-8960

A P P E N D I X

Army Regulation 27–10

Legal Services

# Military Justice

Headquarters
Department of the Army
Washington, DC
16 November 2005

**UNCLASSIFIED**

submitted by medical officers for use at courts-martial, boards, or committees (in preference to requiring the appearance of medical officers as witnesses to present testimony in person).

### 7–4. Army nurses

The applicable portions of paragraph 7–3 above govern the use of Army Nurse Corps officers. However, when Army Nurse Corps officers or other nursing service personnel are involved in the proceedings (see AR 40–1, para 2–19*b*) they may be detailed as members of courts-martial, nonprofessional boards, or committees.

### 7–5. Medical specialist corps

The applicable portions of paragraph 7–3 above govern the use of Army Medical Specialist Corps officers. However, when Army Medical Specialist Corps officers or other food service, physical, or occupational therapy personnel are involved in the proceedings (see AR 40–1, para 2–22*b*), they may be detailed as members of courts-martial, nonprofessional boards, or committees.

### 7–6. Inspectors general

*a.* Officers assigned as Inspectors general (IG)s will not be appointed as investigating officers under UCMJ, Arts. 32 or 138; AR 15–6; or any other regulation or directive providing for the appointment of investigating officers and members of courts-martial nor will they be given similar duties that may later disqualify them from making impartial investigations or inquiries into any activity of the HQDA staff agency or command to which they are assigned. (See AR 20–1, para 2–6.)

*b.* NCO assistants to IGs should not be given other duties that would disqualify them from performing their IG duties (see AR 20–1, para 2–6).

### 7–7. Warrant officers

Warrant officers are expressly prohibited from performing additional duties as—

*a.* A member of any court-martial at the trial of any officer senior in grade or date of rank.

*b.* Trial counsel or defense counsel, or assistant trial counsel or assistant defense counsel of a SPCM or GCM.

*c.* Individual military counsel before a GCM unless legally qualified in the sense of UCMJ, Art. 27(b)..

*d.* Investigating officer appointed under the provisions of UCMJ, Art. 32, and R.C.M. 405(d)(1).

*e.* A member of a formally convened military board whose duties include investigation of the conduct, status, liability, or rights of an officer senior in grade or date of rank.


## Chapter 8
## United States Army Trial Judiciary-Military Judge Program

### 8–1. General

*a. Military Judge Program.* The Military Judge Program is a system in which military judges are designated and detailed as judges of GCM and SPCM. This chapter governs the Army wide operation of the Military Judge Program and sets forth procedures to be followed in administering it. This regulation implements UCMJ, Art. 26, which provides for an independent judiciary within the U.S. Army.

*b. Organization.* The Trial Judiciary is an element of the U.S. Army Judiciary, which is in turn an element of the USALSA, a field operating agency of TJAG.

*c. Military judge of a court-martial.*

(1) A military judge will be detailed to all GCMs. A military judge will be detailed to each SPCM, unless a military judge can not be obtained because of physical conditions or military exigencies. If a military judge is not detailed to a SPCM, the convening authority and chief circuit judge will make a detailed written statement of explanation to be appended to the record. Mere inconvenience will not be a reason for failure to detail a military judge.

(2) A military judge will be a commissioned officer of the U.S. Army or USAR who is—

*(a)* A member of the bar of a Federal court or a member of the bar of the highest court of a State.

*(b)* Certified to be qualified for duty as a military judge by TJAG.

*d. Chief Trial Judge.* A military trial judge who is designated by TJAG (see para 1–4*b*) as the chief of military trial judges.

*e. GCM military judge.* A military judge who is assigned to, or for USAR military judges under the professional supervision of, the U.S. Army Trial Judiciary, with the primary duty of presiding over GCMs and SPCMs to which he or she is detailed.

*f. SPCM military judge.* A military judge who is a reservist assigned or attached to, or under the professional supervision of, the U.S. Army Trial Judiciary whose primary duty is to preside over SPCMs to which he or she is detailed.

g. *Tenure for military trial judges.* Judge Advocates are certified as military judges by TJAG and assigned to the Trial Judiciary for a minimum of 3 years, except under any of the following circumstances:

(1) The military judge is assigned to the Sixth Judicial Circuit (Republic of Korea), or such other area where officers are normally assigned for a short tour of 1 or 2 years; in such cases the military judge will be appointed for a 1- or 2-year term;

(2) The Military judge voluntarily requests to be reassigned to other duties, and TJAG approves such assignment;

(3) The military judge retires or otherwise separates from military service;

(4) The military judge is reassigned to other duties by TJAG based on the needs of the Service in a time of war or national emergency;

(5) The officer's certification as a military judge is withdrawn by TJAG for good cause. See section III, chapter 16, Suspension of Military Judges.

## 8–2. Qualifications of military judges

a. A military judge is a JA who has been certified by TJAG as qualified to preside over a GCM and/or SPCM. Before performing duties as a military judge of a GCM, a JA officer must be—

(1) Certified by TJAG as qualified for duty as a military judge.

(2) Designated by TJAG or his or her designee for detail as a military judge.

(3) Assigned to the U.S. Army Trial Judiciary, or assigned and directly responsible to TJAG's designee under UCMJ, Art. 26(c).

b. A military judge of a SPCM must be certified as qualified for duty by TJAG. Military judges who are certified for detail to GCMs are also certified for detail to SPCMs.

c. Appropriate records will be maintained by the Chief, Trial Judge as follows:

(1) Current lists of military judges assigned or attached to the U.S. Army Trial Judiciary.

(2) A separate list of other military judges who may be detailed to SPCMs.

(3) A list of supporting documents showing that the qualifications of each military judge have been met.

## 8–3. Judicial circuits

A judicial circuit is one or more GCM jurisdictions, or the geographical area where the headquarters of such jurisdictions are situated, as designated by TJAG or his or her designee, the Chief Trial Judge. Judicial circuits will be established, but may be altered and dissolved by TJAG, or TJAG's designee as required, at which time all convening authorities concerned will be notified. TJAG or TJAG's designee also will designate one or more duty stations within each judicial circuit at which military judges assigned to the U.S. Army Trial Judiciary will be located.

## 8–4. Functions and duties of military judges

a. *General.*

(1) The primary functions of military judges are to—

(a) Designate the uniform and the date and time of trial, giving due consideration to military missions.

(b) Designate the place of trial subject to any directions contained in the convening order.

(c) Preside over each court-martial to which they have been detailed, to include performance of all judicial duties imposed or authorized by the UCMJ or the MCM.

(2) The military judge's judicial duties include, but are not limited to—

(a) Calling the court into session without the presence of members to hold the arraignment.

(b) Receiving pleas and resolving matters that the court members are not required to consider (UCMJ, Art. 39(a)).

(c) Entering findings of guilty based upon providently entered pleas of guilty immediately without a vote.

(d) Ruling on requests for continuances.

(e) Conducting post-trial sessions under R.C.M. 1102.

(f) The authority to issue orders based on a probable cause standard, pursuant to 10 USC 1565a, requiring DOD DNA repositories to make available specified DNA samples in accordance with the military judge's order.

(3) The purpose of an UCMJ, Art. 39(a), session is to dispose of all matters not requiring the attendance of the members of the court. To achieve the maximum use of such a session, the military judge must ensure that counsel have due notice of the session and sufficient time to prepare for the disposition of matters that must or should be considered.

(4) Military judges assigned to the U.S. Army Trial Judiciary, including all USAR judges under the professional supervision of the Chief Trial Judge, may—

(a) Perform magisterial duties according to chapters 9 and 17 of this regulation.

(b) Issue authorizations on probable cause under chapter 9 of this regulation.

(c) After DOD approval of a request for authorization, receive applications for nonconsensual wire and oral communication intercept authorization orders and determine whether to issue such orders, according to AR 190–53.

(d) Conduct hearings pursuant to AR 190–47 to determine whether an inmate at the USDB suffers from a mental disease or defect that requires inpatient psychiatric care or treatment beyond that available at the USDB.

limited hearing, or a new action by the convening authority, the accused must be located and furnished a copy of the decision. Further proceedings in USACCA cases need not be delayed, however, solely to permit an accused to petition USCAAF for a grant of review or otherwise appeal the matter.

*b.* Any special instructions deemed necessary to carry out the mandate of the Court will be transmitted by the Clerk of Court with the record of trial that was remanded.

(1) The original and any copies of a record of trial that was remanded for further proceedings must remain intact except for documents needed for reintroduction in the further proceedings, such as the original charge sheet and exhibits to be readmitted into evidence. Documents and copies of documents withdrawn should be replaced if not used, or, if used, replaced by a trial counsel memorandum explaining their disposition. In particular, the original copies of a decision of a Court, action of a convening authority, post-trial review or recommendation, pretrial advice, and Article 32 investigation must not be withdrawn. All copies of the record remanded should be returned with the record of further proceedings except that, if action on the sentence is such that no further review pursuant to Article 66 or 67 is required, only the original record need be returned to the Clerk of Court. All copies of the record remanded should be returned with the record of further proceedings.

(2) In addition to any new document in the nature of a pretrial advice and referral to a court-martial, the authenticated record of further proceedings must be accompanied by the original of any new action by a convening authority and the same number of copies of an order promulgating the action as required when a record is initially forwarded for review pursuant to Article 66 or 69, as the case may be.

(3) In the absence of specific advice to the contrary, the GCM authority should consider that an accused's right to speedy disposition of criminal charges, right to address matters to a convening authority, and right of counsel to comment on a SJA's recommendation to the convening authority apply to the further proceedings.

## 13–11. Leave or transfer pending appellate review

*a.* An accused who is under sentence to a dismissal or punitive discharge, approved by the convening authority and unsuspended, and who is not serving a sentence to confinement, may, under AR 600–8–10, voluntarily or involuntarily be authorized by the officer exercising GCM jurisdiction to take leave, including excess leave, until there is a final judgment in the case. The accused who is on excess leave should be transferred to the nearest GCMCA with a regional confinement facility immediately after action is taken by the convening authority.

*b.* The GCM authority will ensure that the Clerk of Court, ATTN: JALS–CCZ, U.S. Army Legal Services Agency, HQDA, 901 North Stuart Street, Arlington, VA 22203–1837 is expeditiously furnished copies of all transfer orders and excess leave orders, or a copy of DA Form 31, when an accused has been transferred from his or her jurisdiction or is placed on excess leave.

## 13–12. Habeas corpus representation

Military prisoners sentenced to death by a court-martial, who seek to file in Federal civilian courts post-conviction habeas corpus petitions, will, upon request to The Judge Advocate General, be detailed military counsel by The Judge Advocate General to assist counsel appointed by the District Court or individually retained for representation in such proceedings and any appeals therefrom. See UCMJ, Art. 70(e). This right exists irrespective of any decision by the accused Soldier to hire civilian counsel at his own expense for such representation.

## 13–13. Tenure for military appellate judges

Judge advocates are certified as military judges by TJAG and assigned to the USACCA for a minimum of 3 years, except under any of the following circumstances:

*a.* The military judge voluntarily requests to be reassigned to others duties, and TJAG approves such assignment;

*b.* The military judge retires or otherwise separates from military service;

*c.* The military judge is reassigned to other duties by TJAG based on the needs of the Service in a time of war or national emergency;

*d.* The officer's certification as a military judge is withdrawn by TJAG for good cause. See section III, chapter 16, Suspension of Military Judges.

## Chapter 14
## Application for Relief under Article 69, UCMJ

### 14–1. General

*a.* This chapter implements R.C.M. 1201(b)(3) and UCMJ, Art. 69(b). It prescribes the procedures for applying to TJAG for relief from the findings or sentence in a SPCM or SCM court-martial case that has been finally reviewed, but has not been reviewed by the USACCA.

(1) TJAG may vacate or modify the findings or sentence in whole or in part and may grant relief on grounds of—



U.S. Department
of Transportation

United States
Coast Guard



MILITARY JUSTICE MANUAL
COMDTINST M5810.1D

**6.D.3.      Designation of Special Court-Martial Judges**

All personnel certified as qualified for duty as military judges by TJAG are designated as part-time special court-martial military judges. Detail of individual judges to specific cases shall be in accordance with the procedures prescribed in paragraph 3.H.1 above.

**6.D.4.      Procedure for Revocation of Certification of Military Judge or Counsel**

*[See, section 6.G below.]*

## 6.E. TENURE FOR MILITARY TRIAL AND APPELLATE JUDGES

**6.E.1.      Military Trial Judges**

A military trial judge, including the Chief Trial Judge, is assigned for a minimum of three years, except when he or she:

a.      Assumed the duty as trial judge on a less than three-year basis or requests to be reassigned to other duties, and the Chief Counsel approves such assignment;

b.      Retires or otherwise separates from military service;

c.      Is reassigned to other duties by the Chief Counsel based on the needs of the service in time of war or national emergency;

d.      Is reassigned, as a line officer or within the legal program to another billet, under the normal personnel assignment process based on the needs of the service and without regard to any prior performance of judicial duties; or,

e.      Is temporarily, indefinitely, or permanently suspended from practice as a military trial judge by TJAG [General Counsel, Department of Transportation] for good cause [*see*, section 6.G below.].

**6.E.2.      Appellate Judges**

An appellate judge is assigned to the United States Coast Guard Court of Criminal Appeals for a minimum of three years, except when he or she:

a.      Assumed the duty as appellate judge on a less than three-year basis or requests to be reassigned to other duties, and the Chief Counsel, in consultation with TJAG, approves such assignment;

b.      Retires or otherwise separates from military service;



c.    Is reassigned to other duties by the Chief Counsel, in consultation with TJAG, based on the needs of the service in time of war or national emergency;

d.    Is reassigned, as a line officer or within the legal program to another billet outside the Washington, DC area, under the normal personnel assignment process based on the needs of the service and without regard to any prior performance of judicial duties; or,

e.    Is temporarily, indefinitely, or permanently suspended from practice as an appellate judge by TJAG for good cause [*see*, section 6.G below.].

## 6.F. CERTIFICATION OF COUNSEL UNDER ARTICLE 27(b), UCMJ

### 6.F.1.      General

In addition to the requirements stated in RCM 502, each attorney is expected to meet the qualifications listed below in order to become certified in accordance with Article 27(b), UCMJ.

### 6.F.1.a.          Designation as Law Specialist

Each attorney serving in a legal program billet is expected to obtain designation as a law specialist. Authority to designate attorneys as law specialists has been delegated to the Chief Counsel. Requests for designation as a law specialist shall be made to the Chief Counsel and shall include the information required by Article 6.A.6, Coast Guard Personnel Manual, COMDTINST M1000.6 (series). Requests may be submitted in writing or may be made online through the Chief Counsel's web site. When requesting certification online, copies of the applicant's law degree and bar license or card must be faxed to G-LPD to complete the application.

### 6.F.1.b.          Basic Lawyer Course

Each law specialist must successfully complete the Basic Lawyer Course conducted by the Naval Justice School or the Basic Judge Advocate Course conducted by the U.S. Army or Air Force. [Note: Designation as a law specialist is not a prerequisite to attend the Basic Lawyer Course.] Waivers of this requirement may be granted on a case-by-case basis and must include a positive recommendation from the SJA requesting the waiver. Waiver requests should also include a listing of all military justice on-the-job training such as assistant counsel at courts-martial, comparable prior trial experience in civilian courts or previous certification in one of our sister services.

### 6.F.2.      Certification

Personnel already designated as law specialists will normally receive Article 27(b), UCMJ certification and be sworn in upon graduation from the Basic Lawyer Course at

# EXHIBIT F

IN THE UNITED STATES COURT OF APPEALS
FOR THE ARMED FORCES

UNITED STATES,

                Appellee

         v.

Darrell T. OPPERMANN
Lieutenant Commander
  (O-4)
U.S. Navy,

               Appellant

ANSWER TO SUPPLEMENT TO
PETITION FOR GRANT OF REVIEW

USCA Dkt. No. 06-0731/NA

Crim. App. Dkt. No. 200500012

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES
COURT OF APPEALS FOR THE ARMED FORCES

WILBUR LEE
Major, U.S. Marine Corps
Appellate Government Division
Navy-Marine Corps Appellate
  Review Activity
716 Sicard Street SE, Suite 1000
Washington Navy Yard DC 20374
(202) 685-7429
CAAF Bar# 32893

## Issue Presented

WHETHER THE EQUAL PROTECTION COMPONENT OF
FIFTH AMENDMENT DUE PROCESS WAS VIOLATED AT
TRIAL AND IN THE COURT OF CRIMINAL APPEALS
WHERE THE MILITARY JUDGE AND THE JUDGES OF
THAT COURT SERVE WITHOUT THE PROTECTION OF A
FIXED TERM OF OFFICE, WHILE THOSE IN THE ARMY
AND COAST GUARD ENJOY SUCH PROTECTION BY
REGULATION.

## Statement of Statutory Jurisdiction

Appellant invokes this Court's jurisdiction under Article

67(a)(3), Uniform Code of Military Justice, 10 U.S.C. §

867(a)(3).

## Statement of the Case

A military judge sitting as a general court-martial

convicted Appellant, pursuant to his pleas, of dereliction of

duty, failure to obey a lawful order, operating a vehicle while

drunk, being drunk on duty, wrongfully and recklessly engaging in

conduct likely to cause death or serious bodily harm, and being

incapacitated for duty through prior indulgence in intoxicating

liquor, in violation of Articles 92, 111, 112, and 134, UCMJ, 10

U.S.C. §§ 892, 911, 912, and 934.  Appellant was sentenced to

confinement for 9 months, forfeiture of $2,000.00 pay per month

for a period of 9 months, and a dismissal from the Naval Service.

The convening authority approved the sentence adjudged, but

pursuant to a pretrial agreement, suspended all confinement an

forfeitures for a period of 12 months from the date of his

action.

The court below affirmed the findings and sentence on June

29, 2006. *United States v. Oppermann*, No. 200500012

(N.M.Ct.Crim.App. June 29, 2006).  Appendix A.

1

**Statement of Facts**

Those facts necessary to resolve the issues presented are provided in the argument below.

**Argument**

> APPELLANT FAILS TO ESTABLISH THE LACK OF FIXED TERMS OF OFFICE FOR NAVY MILITARY JUDGES VIOLATES HIS RIGHT TO EQUAL PROTECTION OF THE LAW UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT SINCE NO OTHER SERVICE JUDGES HAVE TRUE FIXED TERMS, AND TO THE EXTENT THE SERVICES DIFFER REGARDING THE TERMS UNDER WHICH THEIR RESPECTIVE JUDGES SERVE, THOSE DIFFERENCES ARE VALID UNDER THE VERY DEFERENTIAL RATIONAL BASIS REVIEW APPLIED TO DUE PROCESS ANALYSIS.

The United States hereby generally opposes Appellant's Supplement to Petition for Grant of Review in the above-referenced case, and relies upon its brief filed with the Navy-Marine Corps Court of Criminal Appeals, appended hereto (Appendix B), to demonstrate that Appellant's conviction and sentence are correct in law and in fact, unless requested to do otherwise by this Court.  The Government notes that that this Court has previously declined to review the very issue Appellant presents to this Court in *United States v. Gaines*, USCA Docket No. 06-0127/NA (C.A.A.F. August 11, 2006).

2

## Conclusion

WHEREFORE, the Government requests that this Court deny
Appellant's petition to review this case.

WILBUR LEE
Major, U.S. Marine Corps
Appellate Government Division
Navy-Marine Corps Appellate
   Review Activity
716 Sicard Street SE, Suite 1000
Washington Navy Yard DC 20374
(202) 685-7429
CAAF Bar# 32893

## Appendix

A) *United States v. Oppermann*, No. 200500012 (N.M.Ct.Crim.App.
June 29, 2006).

B) Answer on Behalf of the Government, Navy-Marine Corps Court of
Criminal Appeals, dated July 27, 2005.

## Certificate of Filing and Service

I certify that the foregoing was delivered to the Court, and
a copy was delivered to appellate defense counsel on August 21,
2006.

WILBUR LEE
Major, U.S. Marine Corps
Appellate Government Division

3

# IN THE U.S. NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS
## WASHINGTON NAVY YARD
## WASHINGTON, D.C.

### BEFORE

**J.W. ROLPH**          **J.F. FELTHAM**          **J.D. HARTY**

### UNITED STATES

### v.

### Darrell T. OPPERMAN
### Lieutenant Commander (O-4), Nurse Corps, U. S. Navy

NMCCA 200500012                          Decided 29 June 2006

Sentence adjudged 20 August 2003. Military Judge: R.S.
Chester. Review pursuant to Article 66(c), UCMJ, of General
Court-Martial convened by Commanding General, Marine Corps Base,
Camp Pendleton, CA.

LT BRIAN MIZER, JAGC, USNR, Appellate Defense Counsel
MR. EUGENE R. FIDELL, Civilian Appellate Defense Counsel
MR. MATTHEW S. FREEDUS, Civilian Appellate Defense Counsel
MS. CHARLOTTE E. CLUVERIUS, Civilian Appellate Defense Counsel
LCDR R.W. SARDEGNA, JAGC, USNR, Appellate Government Counsel

AS AN UNPUBLISHED DECISION, THIS OPINION DOES NOT SERVE AS PRECEDENT.

PER CURIAM:

A military judge, sitting as a general court-martial,
convicted the appellant, pursuant to his pleas, of dereliction in
the performance of his duties, failure to obey a lawful order,
physically controlling a vehicle while drunk, being drunk on
duty, wrongfully and recklessly engaging in conduct that was
likely to cause death or serious bodily harm (two
specifications), and being incapacitated for the proper
performance of his duties as a result of wrongful previous
overindulgence in intoxicating liquor, in violation of Articles
92, 111, 112, and 134, Uniform Code of Military Justice, 10
U.S.C. §§ 892, 911, 912, and 934. The military judge sentenced
the appellant to confinement for nine months, forfeiture of
$2,000.00 pay per month for a period of nine months, and to be
dismissed from the United States Navy. The convening authority
approved the adjudged sentence, but suspended the adjudged
confinement and forfeitures pursuant to a pretrial agreement.

*App. A*

We have carefully examined the record of trial, the appellant's two assignments of error, the Government's response, and the appellant's reply. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ.

### Constitutional Due Process

In his first assignment of error, the appellant claims the equal protection component of the Fifth Amendment to the Constitution of the United States was violated at his trial, and is being further violated now, because the military judges who presided at his trial, and the judges of this court, serve without the protection of a fixed term of office, whereas judges in the United States Army and United States Coast Guard enjoy such protection by regulation. We disagree, and decline to grant relief. *See Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994), aff'd, 517 U.S. 748 (1996).

### Sentence Severity

We find no merit in the appellant's claim that his sentence was inappropriately severe, and that "[d]isapproval of the dismissal and other parts of the approved sentence, with substitution of a reprimand," would be an appropriate resolution. Appellant's Brief of 27 May 2005 at 21. *See United States v. Healy*, 26 M.J. 394 (C.M.A. 1988); *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982). The appellant was a lieutenant commander in the United States Navy. On 15 September 2002, while serving as a nurse anesthetist, he was found drunk on duty at Naval Hospital, Camp Pendleton, California; was incapacitated for duty as a result of previous overindulgence in intoxicating liquor; and, while drunk, administered anesthesia, or made adjustments to anesthesia being administered to two female patients in labor. As a result of his intoxication, the appellant failed to timely respond to repeated pages from hospital personnel on his duty pager. After being relieved from duty, he disobeyed an order not to drive himself home, and drove a truck from Camp Pendleton to Oceanside, California, while drunk. In May 2001, the appellant received nonjudicial punishment for driving a car aboard Camp Pendleton with a blood alcohol concentration of 0.298 percent.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved by the convening authority.

For the Court

R.H. TROIDL
Clerk of Court

2

IN THE UNITED STATES NAVY-MARINE CORPS
COURT OF CRIMINAL APPEALS

Before Panel No. 1

| | | |
|---|---|---|
| UNITED STATES, | | ANSWER ON BEHALF OF THE GOVERNMENT |
| | Appellee | |
| v. | | Case No. 200500012 |
| Darrell T. OPPERMANN | | Tried at Camp Pendleton, California |
| 467 86 1243 | | on 16 May & 20 August 2004 |
| Lieutenant Commander | | by General Court-Martial |
| (O-4) | | Convened by Commanding General, |
| U.S. Navy, | | Marine Corps Base |
| | Appellant | |

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES
NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS

### Statement of the Case

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas, of dereliction of duty, failure to obey a lawful order, operating a vehicle while drunk, being found drunk on duty, wrongfully and recklessly engaging in conduct likely to cause death or serious bodily harm, and being incapacitated for duty through prior wrongful indulgence in intoxicating liquor, in violation of Articles 92, 111, 112, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 911, 912 & 934. Appellant was sentenced to confinement for 9 months, forfeiture of $2,000.00 pay per month for a period of 9 months, and a dismissal from the Naval Service. The convening authority approved the sentence as adjudged and, pursuant to a pretrial agreement, suspended all confinement and forfeitures for a period of 12 months from the date of the convening authority's action.

APP. B

## Statement of Facts

On 15 September 2002, Appellant was assigned and stood duty at the Camp Pendleton Naval Hospital as the hospital nurse anesthetist. Appellate Exhibit. II at 1. In this capacity, Appellant was the sole provider of anesthesia service throughout the hospital on that date, including the labor and delivery area and the emergency room. Record at 36-37; Appellate Ex. II at 1. Appellant was responsible for administering anesthetics to patients and overseeing the patients to whom they had been administered. Appellate Ex. II at 1. This required him to respond to pages from other medical personnel at the hospital for requests concerning anesthesia services. R. at 32. Notwithstanding his weighty responsibilities, Appellant began drinking gin after arriving at the hospital that day. R. at 29-30. In fact, he drank more than a pint of gin. R. at 30. Appellant became drunk and, not knowing whether they represented emergencies or not, failed to respond to a number of pages requesting anesthesia services and/or consultations, claiming he was "getting [him]self together." R. at 28-32, 73; Appellate Ex. II at 1. Appellant also administered anesthesia to two patients while he was under the influence of alcohol. R. at 37; Appellate Ex. II at 2. Eventually, hospital personnel noticed Appellant's face looked flushed and that he smelled of alcohol. R. At 39. A staff doctor ordered Appellant to appear for a fitness for duty examination. R. at 40. Appellant was given a blood alcohol test and relieved of duty late in the afternoon on 15 September 2002. Appellate Ex. II at 1. The result of Appellant's blood alcohol content test was .333 grams per 100 milliliters of blood, more than 3 times the standard for being drunk under military law. R. at 41; Appellate Exhibit II at 2. Subsequent to submitting to the blood alcohol test, Appellant was ordered not to drive his vehicle. Appellate Exhibit II at 2. Notwithstanding the order, which Appellant heard and understood, Appellant knowingly violated it by driving his pickup truck to an off-base motel. R. at 34-35; Appellate

2

Ex. II at 2. Appellate admits he was still drunk when he did so. R. at 36. Those remaining facts necessary to a disposition of the assigned errors are included in the argument, *infra*.

## Errors Assigned

### I.

THE EQUAL PPROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING FURTHER VIOLATED NOW BECAUSE THE MILITARY JUDGES AND THE JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION.

### II.

THE SENTENCE IS UNDULY SEVERE.

## Argument

### I.

THE APPELLANT FAILS TO ESTABLISH THE LACK OF FIXED TERMS OF OFFICE FOR NAVY MILITARY JUDGES VIOLATES HIS RIGHT TO EQUAL PROTECTION OF THE LAW UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT SINCE NO OTHER SERVICE JUDGES HAVE TRUE FIXED TERMS. TO THE EXTENT THE SERVICES DIFFER REGARDING THE TERMS UNDER WHICH THEIR RESPECTIVE JUDGES SERVE, THOSE DIFFERENCES ARE VALID UNDER THE VERY DEFERENTIAL RATIONAL BASIS REVIEW APPLIED TO DUE PROCESS ANALYSIS.

It is now well settled that the Due Process Clause of the Fifth Amendment applies to servicemembers at court-martial. *United States v. Graf,* 35 M.J. 450, 454 (C.M.A 1992). It is also firmly established that Fifth Amendment due process includes an equal protection component, *Bolling v. Sharpe,* 347 U.S. 497 (1954), which, generally speaking, dictates that "persons similarly situated should be treated alike." *City of Cleburn v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). Not all disparate treatment by the Government, however, rises to the

level of an equal protection violation. In fact, when the Government has neither discriminated

on the basis of a suspect classification, nor denied an accused a fundamental right, the

Government's varied treatment of service members will not be disturbed so long as there is a

rational basis for any distinctions made. *United States v. Means*, 10 M.J. 162, 165 (C.M.A.

1981).

Appellant asserts that the lack of fixed terms for Navy-Marine Corps judges, specifically

the judge that presided over his court-martial and the members of this Court, violates the equal

protection component of the Due Process Clause, given that Army and Coast Guard judges enjoy

set terms of office. Appellant's Brief of 27 May 2005 at 4-17. Noting the Supreme Court's

opinion in *United States v. Weiss*, 35 M.J. 450 (CMA 1992)(holding that servicemembers do not

have a fundamental right under the Fifth Amendment to be tried by military judges with set

terms of office), appellant effectively concedes his case does not implicate a fundamental right.

Appellant's Brief at 5. Thus, there can be no dispute that a rational basis review is appropriate in

this case. Nevertheless, appellant contends that once the Army and Coast Guard issued terms of

office regulations for their trial and appellate military judges, the Navy was required to follow

suit in order to avoid violating appellant's due process rights. Appellant's Brief at 6. The failure

to do so, appellant argues, was "arbitrary and capricious" and therefore fails even rational basis

review. *Id.* Appellant's claim, however, is plainly wrong.

As an initial matter, appellant's assertion that Army and Coast Guard judges have "fixed

terms" is not wholly accurate. In actuality, the judges of these respective services are subject to

the same personnel decisions that Navy judges potentially encounter. For example, under the

Coast Guard model, although judges have established 3-year terms of office, they may be

removed from their positions "under the normal personnel assignment process based on the

4

needs of the service ...."  Commandant Instruction M5810.1D, Chapter 6, Section E.1 and E.2

(17 August 2000).  Army judges may similarly be removed from office "based on the needs of

the service in time of war or national emergency," or "for good cause."  Army Regulation 27-10,

Chapter 13, Section 12 (20 August 1999).  Thus, these judges really do not serve under so-called

"fixed terms," but rather, under terms that may be liberally modified at the discretion of those

making personnel decisions in these respective services.

Furthermore, these "terms" are hardly different from the Navy system where all judges

receive orders (of set duration) and may be removed only for proper reasons.  The only

difference is that Navy judges, in theory, could be removed for no reason at all, while Army and

Coast Guard judges can only be removed for a specified reason.  Practically speaking, however,

this is a distinction without substance, because a Navy judge would never be removed on a mere

whim.  If a Navy judge were to be removed based upon his or her rulings, such action would

clearly be illegal and punishable by court-martial.  *See Graff,* 35 M.J. at 471 (holding that

exercising the power to decertify judges or transfer a judge based on disagreements with the

appropriateness of the judge's rulings violates Articles 26 and 37, UCMJ); *see also* Article 98,

UCMJ (making it unlawful to intentionally fail to enforce or comply with the procedural

obligations under the UCMJ).  Thus, there really is no "unequal" treatment of service members

tried by judges from the different services.

Even assuming these regulations cause service members to be treated "differently," the

distinct approaches to judicial assignments among the respective services clearly meet the very

deferential rational basis standard of review.  There are numerous possible explanations why the

Navy declined to implement so-called "fixed terms."  For example, the Secretary of the Navy (or

Judge Advocate General (JAG)) may have determined that limiting the mobility of military

5

judges, who tend to possess the greatest expertise in the area of military justice, would not best

serve the fluctuating and evolving needs of the Navy. One need look only to the military justice

needs implicated by Operation Iraqi Freedom, Operation Enduring Freedom, and the related

military tribunals to appreciate this point. Should the JAG be called on to provide military

justice expertise on short notice, he has the ability to draw from the best human resources

available (including from the Court) to respond to that call.

Similarly, the Secretary of the Navy may have decided that having the ability to place a

particular judge advocate on the bench (and thereby replacing another individual) at a specific

time will ensure that the necessary training and career development of judge advocate officers

can be accomplished. For example, if a particular judge advocate were to be selected to serve in

an important position requiring military justice expertise, having the ability to place that judge

advocate in a position within the judiciary in order to augment his or her military justice

experience prior to taking his ultimate assignment makes sense. On the other hand, having to

wait until set terms expire might impede these efforts.

Additionally, there is the consideration that the Navy's Judge Advocate General's Corps

is considerably smaller than those of the Army and Air Force, yet no less deployable world-wide.

That fact alone justifies the additional flexibility in the allocation and deployment of judge

advocates that a lack of fixed terms provides.

The Navy's approach has been endorsed in at least one other setting. Under the Military

Justice Act of 1983, the Secretary of Defense was required to set up an advisory commission to

consider, *inter alia*, whether military judges should have "tenure." Pub.L. No. 98-209, 97 Stat.

1393 (1983). That Commission ultimately recommended against providing set terms to military

trial and appellate judges. Military Justice Act of 1983 Advisory Commission Report (1984) at

8-9. Thus, the rationale supporting the Navy approach has been recognized even at the Congressional level.

Finally, this Court should also consider our superior court's decision in *United States v. Hoesing*, 5 M.J. 355 (C.M.A. 1978). In that case, the Court addressed the issue of whether the equal protection component of the Due Process Clause permitted differing punishments for the same conduct among the various services.[1] The Court answered that question in the affirmative. To hold otherwise, the Court found, would be to allow the service secretary of one service to promulgate regulations affecting the administration of justice in another service. 5 M.J. at 358. Congress never intended that result, the Court said, and to allow it would be unacceptable. *Id.*

> In permitting the Secretary of each service to propound regulations for the government of his respective service, Congress sanctioned distinctions between the treatment of personnel in the various services. While the issue in this case relates to the punishment of an act in violation of the Uniform Code of Military Justice, appellant's argument for interservice equality of treatment would require all services to adopt the same punitive regulations[ ] . . . Congress has never required such uniformity among the services, and it has consistently authorized the Secretary of each armed force to promulgate regulations to meet special needs of his service, as determined by him.

5 M.J. at 358. If regulations permitting servicemembers to be exposed to and receive different punishments for the same conduct across the various services does not violate the equal protection component of the Due Process Clause, then there is no reason to find that differing regulations regarding the terms of military and appellate judges does.

The justifications addressed above firmly establish a rational basis for the distinctions in the Navy system challenged by appellant. Under the precedent of the Supreme Court, this Court should be satisfied that the manner in which military judges are assigned in the Navy comports

---

[1] The accused claimed that the fact that the Coast Guard and Navy, by regulation, allowed certain drug prosecutions under Art. 92, UCMJ that the Army and Air Force regulations required to be prosecuted under Art. 134, UCMJ violated equal protection.

7

with Constitutional Due Process. *See Heller v. Doe,* 509 U.S. 312, 319 (1993)(noting that "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.")(citation omitted); *see also FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 320 (1993)(noting that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," which "must be upheld against an unequal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").  Since the distinctions raised by appellant are not based on a suspect classification and do not involve a denial of a fundamental due process right, this Court should defer to the sound judgment of those best suited to determine the appropriate balance between a desire for an independent military judiciary, and the need for maximum flexibility. *See Goldman v. Wienberger,* 475 U.S. 503, 508 (1986)(citing *Rostker v. Goldberg,* 453 U.S. 57 (1981))(holding that judicial deference "is at its apogee" when Congress acts pursuant to its broad grant of authority to regulate the land and naval forces).

8

## II.

WHERE A NURSE ANESTHETIST IN A NAVAL HOSPITAL WAS DRUNK ON DUTY, FAILING TO RESPOND TO PAGES, ADMINISTERING ANESTHESIA TO TWO PATIENTS WHILE DRUNK, HIS BLOOD TESTED AT MORE THAN THREE TIMES THE LEGAL LIMIT, AND WHERE HE VIOLATED AN ORDER AND DROVE HIS TRUCK WHILE STILL DRUNK, A SENTENCE THAT INCLUDES CONFINEMENT AND A DISMISSAL IS ENTIRELY APPROPRIATE. APPELLANT'S SENTENCE IS PARTICULARLY APPROPRIATE GIVEN HIS LONG HISTORY OF ALCOHOL PROBLEMS, THE OPPORTUNITIES HE WAS GIVEN TO ADDRESS HIS DEPENDENCE, AND HIS PRIOR ALCOHOL RELATED DISCIPLINARY RECORD.

A court-martial is free to impose any legal sentence it deems appropriate. *United States v. Turner*, 14 U.S.C.M.A. 435, 437; 34 C.M.R. 215, 217 (1964); RCM 1002. An appropriate sentence results from an "individualized consideration" based upon "the nature and seriousness of the offense and character of the offender." *United States v. Rojas*, 15 M.J. 902, 919 (N.M.C.M.R. 1983), *citing United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982), *aff'd*, 20 M.J. 330 (C.M.A. 1985). Courts of Military Review are tasked with determining sentence appropriateness, not clemency. Clemency is a grant of mercy entirely within the prerogative of the convening authority. *United States v. Healy*, 26 M.J. 394, 395-6 (C.M.A. 1988.).

This case did not represent Appellant's first experience with military justice, nor was it his first alcohol related incident. In 1989, Appellant referred himself for alcohol treatment and received Level III treatment. Pros. Ex. 1. In February 2001, after again referring himself for treatment, Appellant drove his vehicle while intoxicated and reported for work in a similar state. Pros. Ex. 2 at 2; Pros. Ex. 4 at 1. This incident resulted in his attending a 14-day intensive outpatient treatment program with a yearlong follow-on recovery program. Pros. Exs. 4 at 1. It also resulted in his being taken to captain's mast, where he received a punitive letter of

9

reprimand. Pros. Ex. 2 & 3. Beginning in April of 2001, Appellant attended Alcoholic's

Anonymous meetings three times weekly, right up until he committed the offenses at issue.

Pros. Ex. 4 at 1, 3-5.

The military judge set forth on the record the repeated opportunities Appellant had to

address his dependency and correct his behavior. R. at 210. Yet Appellant did not do so. After

his name was removed from the list for promotion to Commander, Pros. Ex. 5 at 4-5, Appellant

stated how the April 2001 driving under the influence incident and resulting captain's mast

constituted a "wake up call." Pros. Ex. 5 at 3. "One which [sic] I have taken to heart." *Id.*

Apparently that was not the case. Instead, Appellant drove while intoxicated again and, as the

military judge pointed out, R. at 209-211, repeatedly placed his own concerns above those of his

family, his patients, and the general public. Appellant could have asked for time off from work

for additional treatment but did not, citing career concerns. R. at 172, 188; *see also* Appellant's

Brief at 19. He could have reported that he was unable to fulfill his responsibilities instead of

risking the lives of his patients by administering anesthesia while he was drunk but didn't. R. at

41-42. This was also, presumably, because of career concerns. He could have followed orders

and waited for his wife to come and pick him up from the hospital but didn't. Instead, he drove

while drunk to a motel because he realized his career was, in effect, over and wanted to "get

away from the Command, from the Base." R. at 35.

Appellant's conduct was extremely serious. As he himself admitted, R. at 39,

administering anesthesia to patients while he was drunk could easily have resulted in death or

serious injury to those patients. The same could be said for his driving while drunk. It is only by

the grace of God that no deaths or injuries occurred. Against this background, Appellant's

argument of "no harm, no foul," *see* Appellant's Brief at 18, is shockingly irresponsible.

Not satisfied with that argument, Appellant argues that his conduct is actually the Navy's fault. Appellant's Brief at 18-20. This starkly contrasts with Appellant's admission at trial that he was responsible for his own actions. R. at 199. Appellant now, however, paints a picture of a helpless alcohol-dependent victim who has been disserved by the Navy. Human beings, however, are ultimately responsible for their own decisions and actions. Appellant is no exception. The alcohol dependency that led to his committing the instant offenses is Appellant's responsibility and no one else's. He must answer for it.

Finally, Appellant argues that this Court should disapprove the sentence approved by the convening authority and instead approve only a reprimand. Such an argument ignores the fact that Appellant already received a reprimand at captain's mast for driving while drunk, without apparent effect on his behavior. Moreover, the instant charges are both more extensive and serious than what was before the commanding officer at the April 2001 captain's mast. All notions of deterrence, general and specific, demand that the approved sentence extend beyond a mere reprimand. The Government respectfully submits that a dismissal is an eminently appropriate punishment for someone of Appellant's rank and experience committing the acts at issue in this case. Appellant was a commissioned officer. There simply is no place in the U.S. Navy for officers who commit the crimes to which Appellant has pled "Guilty." Accordingly, the Government respectfully requests this Court to affirm the sentence as adjudged and approved below.

A full and fair reading of Appellant's entire record of trial compels the conclusion that Appellant's sentence resulted from an individualized consideration based on the nature and seriousness of the offenses and the character of the offender. That is all the law requires. *Rojas* at 919; *Snelling* at 268. Appellant's argument amounts to a plea for clemency, which has already

11

been denied by the convening authority.  Appellant's sentence is legal and appropriate and should be affirmed as adjudged and approved below.

### Conclusion

WHEREFORE, the Government respectfully requests that this Court affirm the findings and sentence as adjudged and approved below.

R. W. SARDEGNA
*Lieutenant Commander, JAGC,*
*U.S. Naval Reserve*
*Appellate Government Counsel*

12

# EXHIBIT G

*United States Court of Appeals for the Armed Forces*
*Washington, D.C. 20442-0001*

UNITED STATES,                    )    USCA Dkt. No.   06-0731/NA
                                  )    Crim.App. No.  200500012
                  Appellee )
                                  )
        v.                        )    ORDER DENYING PETITION
                                  )
                                  )
Darrell T.                        )
OPPERMANN,                        )
                                  )
                  Appellant )

        On consideration of the petition for grant of review of the

decision of the United States Navy-Marine Corps Court of

Criminal Appeals, it is by the Court this 11th day of October,

2006,


        ORDERED:

        That said petition be, and the same is hereby denied.



                        For the Court,



                        /s/ William A. DeCicco
                        Clerk of the Court


cc:  The Judge Advocate General of the Navy
     Appellate Defense Counsel (FIDELL, Esq.)
     Appellate Government Counsel (LEE)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRELL T. OPPERMANN      )
                                )
             Plaintiff,    )
                                )
               v.         )      Civil  Action  No. 06-1824 (EGS)
                                )
UNITED STATES OF AMERICA,   )
                                )
            Defendant.   )
_____)

ORDER

     UPON CONSIDERATION of the Defendant's Motion to Dismiss or, in the Alternative,

for Summary Judgment and the Memorandum of Points and Authorities in Support thereof, any

opposition thereto and the entire record herein, it is this _____ day of _____,

2007,  ORDERED that Defendant's motion should be and it hereby is granted; and it is,

FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE