UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARRELL T. OPPERMANN, )<br>)<br>        *Plaintiff,* )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>        *Defendant.* ) | Civil No. 06-1824 (EGS)<br><br>Judge Sullivan |

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT

*Introduction*

This is an action for review under 28 U.S.C. § 1331 of the constitutionality of a conviction by general court-martial. It is brought as a conventional civil action because the plaintiff, a former Navy nurse, is not and never has been in custody. At issue is whether the inter-service disparity in judicial terms of office—three years vs. at-will—violates the equal protection component of Fifth Amendment due process. It is particularly appropriate that the case be brought here as the District of Columbia school desegregation case, *Bolling v. Sharpe*, 347 U.S. 497 (1954), to which Fifth Amendment equal protection jurisprudence may be traced, arose here.

*Questions Presented*

DOES THE COURT HAVE JURISDICTION OVER CLAIMS THAT A COURT-MARTIAL CONVICTION WAS OBTAINED IN VIOLATION OF THE CONSTITUTION?

IS THERE A RATIONAL BASIS FOR THE INTER-SERVICE DISPARITY IN JUDICIAL TERMS OF OFFICE FOR MILITARY TRIAL AND APPELLATE JUDGES?

*Standard of Review*

The rational basis test applies to equal protection claims that do not involve protected classes. *E.g., Romer v. Evans*, 517 U.S. 620 (1996).

*Governing Constitutional, Statutory and Regulatory Provisions*

The governing provisions of law are the due process clause of the Fifth Amendment; articles 6a, 26 and 66 of the Uniform Code of Military Justice (10 U.S.C. §§ 806a, 826, and 866); Army Regulation 27-10, *Legal Services: Military Justice* ¶¶ 8-1g, 13-12; and U.S. Coast Guard, Commandant Instruction M5810.1D, *Military Justice Manual* arts. 6.E.1, 6.E.2. The statutes and regulations are reproduced in the Appendix to this brief. The regulations also appear at Def. Ex. B (App).

*Statement of the Facts*

Military personnel of all of the armed forces are subject to trial by court-martial under a single Act of Congress, the Uniform Code of Military Justice ("UCMJ"). 10 U.S.C. §§ 801 *et seq.*, a single measure that supplanted earlier service-specific disciplinary statutes (the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard). "Military judges" preside over courts-martial and "appellate military judges" serve on the intermediate appellate courts provided for in the UCMJ and known as Courts of Criminal Appeals. 10 U.S.C. §§ 826, 866(a). Above the Courts of Criminal Appeals is the civilian United States Court of Appeals for the Armed Forces, formerly known as the United States Court of Military Appeals ("COMA"). 10 U.S.C. §§ 867, 941 *et seq.*

In 1994, the Supreme Court held that it is not a violation of due process for military judges to serve without the protection of a fixed term of office. *Weiss v. United States*, 510 U.S. 163, 176-81 (1994). Thereafter, fixed terms of office were prescribed for Army and Coast Guard trial and

appellate military judges but not for those of the Navy, Marine Corps, and Air Force.

Military judges in the United States Army and Coast Guard have the protection of fixed terms of office by service regulation. Def. Ex. B, at 6; Army Regulation 27-10, *Legal Services: Military Justice* ¶ 8-1g (20 Aug 1999), Def. Ex. B (App.); U.S. Coast Guard, Commandant Instruction M5810.1D, *Military Justice Manual* art. 6.E.1, Def. Ex. B (App.). Appellate military judges of the United States Army and Coast Guard Courts of Criminal Appeals have the protection of fixed terms of office by service regulation. Def. Ex. B, at 6; Army Regulation 27-10, *Legal Services: Military Justice* ¶ 13-12 (20 Aug 1999), Def. Ex. B (App.); U.S. Coast Guard, Commandant Instruction M5810.1D, *Military Justice Manual* art. 6.E.2, Def. Ex. B (App.).

Navy and Marine Corps military judges and appellate military judges of the United States Navy-Marine Corps Court of Criminal Appeals ("the Navy Court") do not have the protection of a fixed term of office. Def. Ex. B, at 6; 10 U.S.C. § 866(a).

On August 20, 2003, plaintiff was convicted in a general court-martial bench trial and sentenced to be confined for nine months, to forfeit $2,000 pay per month for nine months, and to be dismissed from the Navy. The military judge who presided at trial did not have the protection of a fixed term of office. Def. Ex. B, at 6; 10 U.S.C. § 827. The convening authority suspended the adjudged confinement and forfeitures pursuant to a pretrial agreement.

Plaintiff's conviction was subject to automatic review by the Navy Court, the judges of which are Navy and Marine Corps officers who serve without the protection of a fixed term of office. On June 29, 2006, the Navy Court, in an unpublished *per curiam* opinion, affirmed the findings of guilt and the sentence as approved by the convening authority. *United States v. Oppermann*, No. 200500012 (N-M. Ct. Crim. App. 2006) (per curiam), Def. Ex. F (App. A).

One of plaintiff's contentions before the Navy Court was that he was denied equal protection of the law as guaranteed by the due process clause of the Fifth Amendment because the military judge who presided at his trial and the judges of the Navy Court who would decide the case on appeal lacked the protection of a fixed term of office, in contrast with the trial and appellate military judges of the Army and Coast Guard. The Navy Court's complete response to this claim was: "We disagree, and decline to grant relief. *See Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994), *aff'd*, 517 U.S. 748 (1996)." Neither *Weiss* nor *Loving* dealt with the inter-service disparity of which plaintiff complained.

Plaintiff filed a timely petition for review by the Court of Appeals for the Armed Forces, raising only the following question:

> WHETHER THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED AT TRIAL AND IN THE COURT OF CRIMINAL APPEALS WHERE THE MILITARY JUDGE AND THE JUDGES OF THAT COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHILE THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION.

On October 11, 2006, the Court of Appeals for the Armed Forces denied plaintiff's petition without plenary briefing, oral argument, or explanation. *United States v. Oppermann*, 64 M.J. 222 (C.A.A.F. 2006) (mem.). Def. Ex. G. That denial is not subject to review by the Supreme Court of the United States by writ of certiorari. 10 U.S.C. § 867a(a).

At no time during the proceedings before the Navy Court or the Court of Appeals for the Armed Forces did the government assert a rational basis for the inter-service disparity in military judicial tenure. Def. Exs. C, F (and App. B).

Neither the Navy Court nor the Court of Appeals for the Armed Forces identified a rational basis for the inter-service disparity in military judicial tenure. Def. Exs. F (App. A), G.


One of plaintiff's contentions before the Navy Court was that he was denied equal protection of the law as guaranteed by the due process clause of the Fifth Amendment because the military judge who presided at his trial and the judges of the Navy Court who would decide the case on appeal lacked the protection of a fixed term of office, in contrast with the trial and appellate military judges of the Army and Coast Guard. The Navy Court's complete response to this claim was: "We disagree, and decline to grant relief. *See Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-96 (C.A.A.F. 1994), *aff'd*, 517 U.S. 748 (1996)." Neither *Weiss* nor *Loving* dealt with the inter-service disparity of which plaintiff complained.

Plaintiff filed a timely petition for review by the Court of Appeals for the Armed Forces, raising only the following question:

> WHETHER THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED AT TRIAL AND IN THE COURT OF CRIMINAL APPEALS WHERE THE MILITARY JUDGE AND THE JUDGES OF THAT COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHILE THOSE IN THE ARMY AND COAST GUARD ENJOY SUCH PROTECTION BY REGULATION.

On October 11, 2006, the Court of Appeals for the Armed Forces denied plaintiff's petition without plenary briefing, oral argument, or explanation. *United States v. Oppermann*, 64 M.J. 222 (C.A.A.F. 2006) (mem.). Def. Ex. G. That denial is not subject to review by the Supreme Court of the United States by writ of certiorari. 10 U.S.C. § 867a(a).

At no time during the proceedings before the Navy Court or the Court of Appeals for the Armed Forces did the government assert a rational basis for the inter-service disparity in military judicial tenure. Def. Exs. C, F (and App. B).

Neither the Navy Court nor the Court of Appeals for the Armed Forces identified a rational basis for the inter-service disparity in military judicial tenure. Def. Exs. F (App. A), G.

*Argument*

I

THE COURT HAS JURISDICTION

The government contends (at 6-9) that the case must be dismissed for lack of jurisdiction because the military courts gave Mr. Oppermann's claim "full and fair consideration." That contention is without merit.

Mr. Oppermann has asserted a substantial constitutional claim: that he was denied due process because the judges who presided over his trial and intermediate appeal served at will, whereas the cases of accuseds who were similarly situated but served in different branches of the service were tried and had their intermediate heard on appeal by judges with the protection of fixed terms.

Under *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006), *pet. for cert. filed*, 75 U.S.L.W. 3286 (U.S. Nov. 15, 2006) (No. 06-691), the Court has subject-matter jurisdiction under § 1331 to hear a non-habeas collateral attack on a court-martial conviction. The standard of review is, as the Court of Appeals charitably put it, "more tangled." *Id.*[1] After reviewing the cases, Judge Williams offered the following summary of the state of the law:

> It suffices for our purposes to repeat *Councilman*'s[2] statement that errors must be fundamental to void a court-martial conviction on collateral review. And in light of *Councilman*'s point that non-habeas review is if anything more deferential than habeas review of military judgments, 420 U.S. at 753, 95 S.Ct. at 1300, a military court's judgment clearly will not suffer such a defect if it satisfies *Burns*'s[3] "fair consideration" test.

---

[1] One author refers to "a relative state of anarchy." Richard Rosen, *Civilian Courts and the Military Justice System: Collateral Review of Courts-Martial*, 108 MIL. L. REV. 5, 88 (1985), quoted in 2 FRANCIS A. GILLIGAN & FREDRIC I. LEDERER, COURT-MARTIAL PROCEDURE § 26-12.00, at 26-7 & n.32 (3d ed. 2006).

[2] *Schlesinger v. Councilman*, 420 U.S. 738 (1975).

[3] *Burns v. Wilson*, 346 U.S. 137 (1953).

448 F.3d at 408.

While we respectfully disagree with the suggestion that there is any difference in the review of courts-martial by habeas and non-habeas means,[4] this case readily meets the test for subject-matter jurisdiction. *See New, supra*, at 406, quoting *Councilman*.

First, the underlying claim is on its face one of constitutional dimension, it being beyond dispute that the federal government under the Fifth Amendment—no less than the states under the Fourteenth—must afford equal protection of the law and, absent some protected class, satisfy the rational basis standard to do so. Interests of this dimension properly engage the review power of the district courts. *Cf. Priest v. Secretary of the Navy*, 570 F.2d 1013, 1016 (D.C. Cir. 1970) ("impairment of First Amendment rights, if it occurred, would be a grave harm").

Second, questions of judicial independence cut to the heart of the legal process, and even after *Weiss*, which held that Fifth Amendment due process does not require military judges to have fixed terms, it nonetheless is beyond dispute that terms of office are at least *pertinent* to judicial independence. The government has never argued that if the disparity of which Mr. Oppermann complains were found to violate Fifth Amendment equal protection, it would be

---

[4] This matter may be clarified if the Supreme Court grants certiorari in *New*. *Councilman*'s suggestion that there is a difference is dictum and we believe there is no proper basis for distinguishing between convictions depending on whether the person convicted is still in custody—*or, as here, ever was. See Kauffman v. Secretary of the Air Force*, 415 F.2d 991, 996 (D.C. Cir. 1969) (making collateral review contingent on custody would be arbitrary since custody is unrelated to gravity of offense, punishment, and violation of servicemember's rights). Sentences such as Mr. Oppermann's, that include "Dismissal" (the commissioned officer's equivalent of a dishonorable discharge, *see* Manual for Courts-Martial, Rules for Courts-Martial 1003(b)(8)(A), -(c)(2)(A)(iv)) have stigmatizing effects that will follow him for the rest of his life and adversely affect his eligibility for VA benefits. 38 U.S.C. §§ 101(2), 5303(a); 38 C.F.R. §§ 3.12(a), -(c)(2). We note our view here solely for the purpose of preserving the issue, inasmuch as this Court is bound by *New*.

anything other than "sufficiently fundamental to void" his conviction. *See Priest, supra*, at 1016.

Third, it cannot be said that Mr. Oppermann's claim was afforded the requisite "full and fair consideration" in the military courts. The Navy Court—whose evaluation must be taken with a grain of salt given the disparity between their own at-will service and the fixed terms enjoyed by their opposite numbers in the Army and Coast Guard—never heard oral argument. It produced a ruling than is not only preposterously terse,[5] but in doing so relied exclusively on cases that were decided *before* the inter-service disparity arose,[6] and therefore not only *do not*, see Def. Ex. B, at 9 & n.5, but *could not*, support the conclusion reached.

For its part, the Court of Appeals for the Armed Forces denied Mr. Oppermann's petition for review. There was neither plenary briefing nor oral argument. Citing a single case from another Circuit, *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986), the government nonetheless insists that even when a matter has thus been disposed of summarily, the "full and fair consideration" test has been satisfied and the inquiry is at an end. We respectfully disagree.

All one need do in this respect is contrast this case with *New*. There the Court of Appeals was faced not with a conclusory and ill-supported brush-off by the service court, but a published opinion that runs to some 18 pages in West's *Military Justice Reporter*. *United States v. New*, 50 M.J. 729 (Army Ct. Crim. App. 1999). At the next stage, the Court of Appeals in *New* was faced not with an unexplained denial of review by the Court of Appeals for the Armed Forces, but a 35-page published opinion. *United States v. New*, 55 M.J. 95 (C.A.A.F. 2001). It is difficult to view the treatment Mr. Oppermann received as so "full and fair" as to render it unnecessary for this Court even to reach the merits of his constitutional claim, as the government would

---

[5] "We disagree, and decline to grant relief." Def. Ex. F (App.), at 2.

[6] *Weiss v. United States*, 510 U.S. 163, 176-81 (1994); *United States v. Loving*, 41 M.J. 213, 295-

apparently have it do.

In *New*, the Court of Appeals cited with apparent approval its own prior decision in *Priest, supra*. It is instructive that Seaman Apprentice Priest received much fuller shrift—two plenary rulings—from the then Court of Military Appeals than did Mr. Oppermann. *See United States v. Priest*, 21 U.S.C.M.A. 64, 44 C.M.R. 118 (1971) (reversing Navy Court court ruling on certification from the Judge Advocate General), 21 U.S.C.M.A. 564, 45 C.M.R. 338 (1972) (affirming on petition for grant of review). Yet the Court of Appeals held it had jurisdiction. 570 F.2d at 1016.

Since the government relies on Tenth Circuit law, it is fair to note that that court itself, after *Watson v. McCotter*, expressly recognized that while summary action by the military courts "is not sufficient to justify our review of" a constitutional issue, "when the military courts' summary affirmance is considered with the other three factors in *Calley*,"[7] a claim can fulfill the requirements for review. *Dodson v. Zelez*, 917 F.2d 1250, 1253 (10th Cir. 1990). Even more recently, the Tenth Circuit has held that issuance by the Court of Appeals for the Armed Forces of a "formulary order . . . denying relief [that] does not indicate the consideration given to petitioner's claims or admit of review" is a factor favoring collateral review. *Khan v. Hart*, 943 F.2d 1261, 1263 (10th Cir. 1991); *see also id.* at 1262 ("formulary order").[8]

---

96 (C.A.A.F. 1994), *aff'd*, 517 U.S. 748 (1996).

[7] *Calley v. Calloway*, 519 F.2d 184 (5th Cir. 1975). Those other three factors were the presence of an issue of substantial constitutional dimension; an issue of law, rather than fact; and possible military considerations that may warrant different treatment of constitutional claims. 917 F.2d at 1252-53.

[8] Given *Khan*'s citation to *King* in counting summary disposition as a factor *favoring* review, it would certainly seem that *King* does not have the preclusive meaning imputed to it by the government. *See also Jefferson v. Berrong*, 783 F. Supp. 1304, 1308 (D. Kan. 1992) (citing *Khan* at 1262 and reviewing ineffective assistance of counsel claim despite summary disposition by Court of Military Appeals), *appeal dismissed*, 992 F.2d 1222, 1993 WL 128710 (10th Cir. 1993).

Finally, the Court should take into account the fact that even as it conferred certiorari jurisdiction on the Supreme Court over decisions of the Court of Appeals for the Armed Forces, Congress expressly excluded denials of review. 28 U.S.C. § 867a(a). The indefensible result of that action—which we hope will be rectified sooner rather than later—is that unless review is available in the district courts, constitutional questions such as the one Mr. Oppermann has raised will never be reviewed in *any* Article III court, since both the Navy Court and the Court of Appeals for the Armed Forces are Article I courts. *Weiss, supra*, at 166-67; *Ryder v. United States*, 515 U.S. 177, 186-87 10 U.S.C. § 941. Adopting a stricter test for collateral review jurisdiction than existed at the time Congress acted would give the limitation it imposed on certiorari review of courts-martial a preclusive effect which there is no evidence that Congress intended.[9] At the very least, the Court should be reluctant to do so "without a clear signal from Congress" that it intended to foreclose meaningful review by the only available Article III court. *See Territory of Guam v. Olsen*, 431 U.S. 195, 201-02 (1977).[10]

---

[9] Indeed, during floor debate on the Military Justice Act of 1983 (which included the expansion of the Supreme Court's certiorari jurisdiction to cover direct appellate review of courts-martial), Senator Kennedy noted

> that, although certiorari review of COMA should alleviate the need for collateral review of military cases, this legislation itself does not modify the general law relating to collateral remedies, and the military defendant should have the *same* access to collateral remedies as is *currently* enjoyed by any Federal or State criminal defendant.

129 CONG. REC. S34,312-13 (daily ed. Nov. 18, 1983) (emphases added)

[10] It would certainly be perverse if the law were not only that enemy aliens convicted by military commissions for war crimes committed as illegal combatants could obtain direct review all the way to the Supreme Court (including a stop at the Article III Court of Appeals for this Circuit, Military Commissions Act of 2006, Pub. L. No. 109-366, § 3(a), 120 Stat. 2600, 2622 (2006) ("MCA") (adding 10 U.S.C. § 950g)), while our own career military personnel such as Mr. Oppermann could not only never get there under 10 U.S.C. § 867a(a), but worse yet, that people in his position *also* had no collateral remedy in *any* Article III court for non-frivolous claimed violations of their constitutional rights.

9

At the end of the day, and entirely agreeing that the case law is "tangled" at best, we believe the cases either dictate an exercise of § 1331 jurisdiction or, alternatively, suggest that the question of jurisdiction and the merits of constitutional claims such as Mr. Oppermann's are so inextricably linked under current jurisprudence that the Court must address the merits in any event.

II

PLAINTIFF'S CONVICTION MUST BE SET ASIDE BECAUSE THE INTER-SERVICE DISPARITY IN JUDICIAL TERMS OF OFFICE VIOLATES FIFTH AMENDMENT EQUAL PROTECTION

A

Mr. Oppermann's conviction must be set aside because the trial denied him due process of law. Additionally, the Navy Court itself could not act on his case for the same reason the trial was defective.[11]

The Fifth Amendment provides in pertinent part that "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." That Fifth Amendment due process is pertinent to military justice is beyond dispute.[12] This case concerns the equal protection component of due process, the applicability of which to the military justice system has been confirmed time and again.[13] The UCMJ itself obviously favors uniformity.[14]

---

[11] In an analogous situation, the Navy Court, quoting its decision in *United States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (C.M.A. 1991), denied a motion to disqualify for lack of terms of office on the basis that "where all are disqualified, none are disqualified." *United States v. Graf*, 32 M.J. 809, 813 n.3 (N.M.C.M.R. 1990), *aff'd*, 35 M.J. 450 (C.M.A. 1992). While the *Allen* footnote indicates that it was futile for Mr. Oppermann to object there to the unprotected status of the judges of that court, we raised the issue there not only to afford the Navy Court an opportunity to address the matter but also in order to preserve it.

[12] *Weiss, supra*, 510 U.S. at 176.

[13] *E.g., United States v. Santiago-Davila*, 26 M.J. 380, 389-90 (C.M.A. 1988), applying *Batson v. Kentucky*, 476 U.S. 79 (1986), and citing *Bolling* and *Frontiero v. Richardson*, 411 U.S. 677

10

The current discrepancy across service lines in this core element of the judicial process, under a statute that Congress intended to be *uniform*, and in the absence of service-specific exigencies that require disparate treatment, is arbitrary and capricious and denies those who stand accused the equal protection of the law.

B

After *Weiss*, the Army and the Coast Guard issued terms of office regulations for their trial and appellate military judges. The other services ultimately refused to do so, apparently after having changed their minds along the way.[15]

---

(1973); *United States v. Robinson*, 39 M.J. 88, 89 & n.* (C.M.A. 1994) (right to expert assistance); *United States v. Tuggle*, 34 M.J. 89, 91-92 (C.M.A. 1992) (imprisonment solely because of inability to pay fine "would rise to a violation of the equal protection component of the Due Process Clause of the Fifth Amendment"); *United States v. Courtney*, 1 M.J. 439, 442 (C.M.A. 1976) (equal protection violated by unfettered prosecutorial discretion in charging marijuana offenses; *held*, no rational justification for punishment differential); *see also United States v. Surry*, 6 M.J. 800, 802 (A.C.M.R. 1978) (finding no unreasonable discrimination in light of "purposes, conditions and duration of parole").

[14] *See* 10 U.S.C. §§ 806a(a), 836(b), 946(c)(2)(B)(i). In *Hamdan v. Rumsfeld*, 548 U.S. __, 126 S. Ct. 2749 (2006), the Court construed § 836(b) to require uniformity as between courts-martial and military commissions and found the disparity that then existed to be defective because it was not "tailored to the exigency that necessitates it." 126 S. Ct. at 2790; *see also id.* at 2793. Justice Kennedy not only agreed, but added that the terminology employed in § 836(b) suggests that a lesser degree of deference is owed to presidential decision making on uniformity than to presidential practicability determinations under § 836(a). *Id.* at 2801. Soon after *Hamdan*, of course, Congress amended the UCMJ to remove only the requirement for uniformity as between military commissions and courts-martial, MCA § 4(a)(3)(B), 120 Stat. at 2631 (amending § 836(b)), but left § 836(b) otherwise intact. The result is not only that—absent some justification "tailored to the exigency that necessitates" a discrepancy—§ 836(b) continues to demand court-martial uniformity across service lines, but also that the federal courts have a duty to ensure that the "uniformity principle," 126 S. Ct. at 2790, is honored. *Hamdan*'s insistence on a reasoned basis for departures from that principle remains, even though the sphere within which it applies no longer extends to military commissions. On the record before this Court, there is, if anything, even less justification for the disparity of which Mr. Oppermann (a citizen and member of our forces) complains than there was for the one the Supreme Court rejected in *Hamdan* (at the suit of an alien said to be in league with our enemies).

[15] Kevin J. Barry, *A Reply to Captain Gregory E. Maggs's "Cautious Skepticism" Regarding Recommendations to Modernize the Manual for Courts-Martial Rule-Making Process*, 166 MIL.

Given *Weiss*, the government had no due process duty to provide military judges with fixed terms of office, but *once it did so voluntarily*, it had to act in a way that comports with equal protection. There may indeed be situations in which the services can and should take divergent paths.[16] And where, as here, there is no suspect class or, given *Weiss*, a fundamental right, all that is required is a rational basis for the discrepancy.[17] But we know of no reason—and the military courts' decisions, such as they are, cite none—that warrants the current inter-service disparity as to judicial terms of office.

As Captain Kevin J. Barry, one of the country's leading military law experts, has written, "it is entirely within the power of the President to impose a system of tenure for military judges."[18] The power to "prescribe regulations providing for the manner in which military judges are detailed," which Congress conferred on the service secretaries, 10 U.S.C. § 826(a), does not preempt the President's authority either as Commander in Chief or under 10 U.S.C. § 836, to require that military judges have the protection of fixed terms of office. Nor, in light of the unitary executive doctrine, *see, e.g., Bancoult v. McNamara*, 445 F.3d 427, 434 (D.C. Cir. 2006), does the grant of authority to the service secretaries render him powerless to require such action by subordinates who fail to do so on their own.[19] Moreover, Congress has expressly recognized the President's role with regard to the fitness of military judges in 10 U.S.C. § 806a(a) (requiring

---

L. REV. 37, 46-47 & n.41 (2000).

[16] *E.g., United States v. Hoesing*, 5 M.J. 355, 358 (C.M.A. 1978) (inter-service distinctions permissible "to meet special needs of [individual] service"); *United States v. Penn*, 4 M.J. 879, 882-83 (N.M.C.M.R. 1978) (finding rational basis for "vessel exception" to right to refuse nonjudicial punishment).

[17] *Romer v. Evans, supra*, cited in *United States v. Wright*, 48 M.J. 896, 901 (A.F. Ct. Crim. App. 1998) (upholding M.R.E. 413 in light of congressional objective of enhancing effective prosecution for sexual assaults), *aff'd*, 53 M.J. 476 (C.A.A.F. 2000).

[18] Barry, note 15 *supra*, at 46.

uniformity across service lines "[t]o the extent practicable").

The current arrangements are even more arbitrary and indefensible than may appear at first glance. In addition to the fact that Navy personnel such as Mr. Oppermann do not receive the same measure of judicial independence protection as do members of both the largest and smallest of the armed forces, they may also be denied that protection as a result of sheer fortuity. Military judges from one service may be detailed to a court-martial convened in another service when permitted by the military judge's Judge Advocate General.[20]

As a result, a Naval officer whose case was tried by a Navy (as here) or a Marine Corps military judge would not have the benefit of the added judicial independence that comes with a fixed term of office, while his or her shipmate whose case happened to be presided over by a Coast Guard or Army military judge *would* have that protection. Conversely, a member of the Coast Guard whose case happened to be heard by a Navy judge would lose the benefit conferred by the Coast Guard's *Military Justice Manual*'s terms of office regulation. These outcomes are absurd and indefensible.

C

The government's position on the merits of the equal protection claim boils down to four propositions, each of which is untenable.

First, the government argues (at 10-12) that due process does not require military judges to have a fixed term of office, and as a result the disparity of which Mr. Oppermann complains is of no moment. It is certainly true, after *Weiss*, that due process makes no such demand on the armed forces, but this argument does not connect with Mr. Oppermann's point. His objection is

---

[19] *See Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981).

[20] Manual for Courts-Martial, Rule for Courts-Martial ("R.C.M.") 503(b)(3); *see also* R.C.M.

to the disparity, and the fact that the Constitution does not dictate terms of office for judges in uniform does not erase the disparity that has arisen since 1999. Contrary to the government's implication (at 10-11), *Weiss* says nothing about the disparity, since it was decided before that disparity arose.[21]

Second, the government argues (at 13) that there are across-the-board protections against unlawful command influence of military judges. But this is not responsive to Mr. Oppermann's claim. In fact it is a disguised defense that the disparity is harmless. But such a defense, in a constitutional case, requires proof beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 24 (1967), and there is simply no way—given the fact that judicial independence can so easily be degraded without anyone's fingerprints—that those protections are so exquisitely perfect that terms of office add literally nothing to the equation.

The government's related reliance (at 13-14) on the availability of the Court of Appeals for the Armed Forces is equally unavailing. Whether or not some higher tier of appeal can ever institutionally moot constitutional flaws at lower tiers, *that* court's authority is not a substitute for equal-footing judicial independence in the services' trial and intermediate appellate courts. This is so because a broad swath of trial court decision making is reviewable only for abuse of discretion, while the service Courts of Criminal Appeals enjoy an unique "awesome, plenary, de novo power of review," *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990), over findings and sentences that is not shared by the Court of Appeals for the Armed Forces. 10 U.S.C. §§ 866-

---

201(e)(4).

[21] The government's glancing appeal for deference to Congress (at 11) is equally wide of the mark, for two reasons. First, the government has pointed to no evidence that Congress is even aware of the inter-service disparity (much less has refused to rectify it), and second, even if Congress had been aware of the disparity and had blessed it, that would not relieve the government of the obligation to identify a rational basis for it.

67; *see generally* DAVID A. SCHLEUTER, MILITARY CRIMINAL JUSTICE: PRACTICE AND PROCEDURE § 17-16(C), at 1078-79 (6th ed. 2004 & Supp. 2006). Hence, even if that court had the deluxe brand of judicial independence that comes with life tenure and protection against diminution of salary, *see* U.S. Const. art. III, it cannot be deemed a cure for the subtle effects of relying on at-will judges for the administration of justice.

Third, the government argues (at 12-13) that there really is no disparity because the Army and Coast Guard regulations have so much flexibility built in that there is no cognizable difference between the resulting environment in those branches of the service and the at-will environment in which judges must still function in the Navy, Marine Corps and Air Force. To accept this contention is to impute to the Army and the Coast Guard acts that were superfluous. This runs against bedrock doctrine. Just as a statute is read to give it meaning, so too, a regulation is read to have meaning, rather than being superfluous. *E.g., Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993). Moreover, to the extent that the government claims judicial independence is identical with and without the three-year Army and Coast Guard regulations, the government would have the burden of showing that, and yet it made no effort to do so in either of the military appellate courts or in its motion here.

Finally, the government has failed to do the one thing it had to do to justify the inter-service disparity and thereby save Mr. Oppermann's conviction: advance a rational basis for the disparity. Here is the closest the government gets to the heart of the matter:

> [T]he Navy may have determined that limiting the mobility of military judges, who tend to possess the greatest expertise in the area of military justice, would not best serve the fluctuating and evolving needs of the Navy. Similarly, Navy leaders may have decided that having the ability to place a particular judge advocate on the bench at a specific time will ensure that the necessary training and career development of judge advocates generally could be accomplished. Having fixed terms for military judges may impede these other staffing and military personnel decisions.

15


Def. Mot. at 14. Not a syllable in these three sentences even attempts to distinguish the Navy from the Army or the Coast Guard. As a result, they do not justify the disparate arrangements. Every single assertion built into them could just as well be said of any branch of the service, each of which obviously experiences "fluctuating and evolving needs."[22]

"Rational basis" analysis may not require much, but it requires *something*, and the government here has provided nothing. On this record, the government's call (at 15) for "defer[ence] to the sound judgment of those best suited to determine the appropriate balance between a desire for an independent military judiciary, and the need for maximum flexibility" is actually a transparent request to abdicate this Court's high function of ensuring compliance with the Constitution, not to mention the UCMJ. *See* note 14 *supra*. That call should not be heeded.

*Conclusion*

For the foregoing reasons, the Court should deny defendant's motion to dismiss or, in the alternative, for summary judgment, and grant summary judgment for plaintiff. The judgment should declare that plaintiff's conviction is unconstitutional and therefore null and void because the inter-service disparity in military judicial terms of office lacks a rational basis and therefore violates the equal protection component of Fifth Amendment due process.

Respectfully submitted,

/s/
EUGENE R. FIDELL (112003)
MATTHEW S. FREEDUS (475887)
FELDESMAN TUCKER LEIFER
  FIDELL LLP
2001 L Street, N.W.

---

[22] The government has abandoned its equally unavailing claim in the military courts that the Navy JAG Corps is smaller than those of the Army and Air Force, yet no less deployable worldwide. *Compare* Def. Ex. C at 6, *with* Def. Ex. D at 4-6.

Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorneys for Plaintiff*

March 2, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARRELL T. OPPERMANN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 06-1824 (EGS) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant.* | ) | Judge Sullivan |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES

Plaintiff has no quarrel with any of the matters set forth in defendant's Statement of Material Facts.

.

                                                Respectfully submitted,

                                                /s/
EUGENE R. FIDELL (112003)
MATTHEW S. FREEDUS (475887)
FELDESMAN TUCKER LEIFER
  FIDELL LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorneys for Plaintiff*

March 2, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARRELL T. OPPERMANN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 06-1824 (EGS) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant.* | ) | |

ORDER

On consideration of defendant's motion to dismiss or, in the alternative, for summary judgment, plaintiff's cross-motion for summary judgment, the parties' oppositions and replies, and the entire record, it is, by the Court, this _____ day of _____, 2007,

ORDERED that defendant's motion be, and the same hereby is, DENIED, and plaintiff's cross-motion be, and the same hereby is, GRANTED, and it is hereby

DECLARED that plaintiff's court-martial conviction is unconstitutional and therefore null and void because the inter-service disparity in military judicial terms of office violates the equal protection component of Fifth Amendment due process.

United States District Judge